[This opinion has been published in *Ohio Official Reports* at 76 Ohio St.3d 369.]

OFFICE OF DISCIPLINARY COUNSEL *v*. TRUMBO.

[Cite as *Disciplinary Counsel v. Trumbo*, 1996-Ohio-386.]

*Attorneys at law—Misconduct—Indefinite suspension—Continually lying to clients, lying to court, and lying to Disciplinary Counsel in the investigation.*

(No. 96-522—Submitted May 7, 1996—Decided August 21, 1996.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 95-60.

_____

{¶ 1} On August 7, 1995, the Office of Disciplinary Counsel, relator, filed a complaint charging respondent, Kimberlee-Joy Trumbo of Cleveland, Ohio, Attorney Registration No. 0039265, in five counts with violating ten Disciplinary Rules and two Rules for the Government of the Bar. These violations included DR 1-102 (A) (4) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation) (five violations); 1-102 (A) (5) (engaging in conduct that is prejudicial to the administration of justice) (five violations); 1-102 (A) (6) (engaging in conduct adversely reflecting on fitness to practice law); 6-101 (A) (1) (handling a legal matter which she knows or should know she is not competent to handle without associating with a lawyer who is competent to handle it) (two violations); 6-101 (A) (2) (handling a legal matter without preparation adequate in the circumstances) (four violations); 6-101 (A) (3) (neglecting a legal matter entrusted to her) (five violations); 7-101 (A) (1) (intentionally failing to seek the lawful objectives of her client through reasonable means permitted by law and the Disciplinary Rules) (two violations); 7-101 (A) (3) (intentionally prejudicing or damaging her client during the course of the professional relationship) (five violations); 7-102 (A) (5) (knowingly making a false statement of law or fact during

the course of representation of a client) (five violations); 8-102 (B) (knowingly making false accusations against a judge); Gov. Bar R. IV(2) (not fulfilling her duty as a lawyer of maintaining a respectful attitude toward the courts, not for the sake of the temporary incumbent of the judicial office, but for the maintenance of its supreme importance); and Gov. Bar R. V(4)(G) (neglecting or refusing to assist or testify in an investigation or hearing) (two violations). A panel of the Board of Commissioners on Grievances and Discipline of the Supreme Court ("board") held a hearing on December 18, 1995 at which the parties submitted stipulations, and the respondent and four character witnesses testified.

Count One

{¶ 2} In April 1994, respondent undertook representation of Norma Keith in a case she had pending against her former employer in the Summit County Court of Common Pleas, and filed for and was granted leave to plead to the defendant-employer's motion for summary judgment. However, respondent never filed a pleading and the court granted the defendant's summary judgment motion. Five days after the summary judgment, respondent again filed a "request for leave to plead to defendant's motion for summary judgment," falsely stating that her computer had been damaged by a storm rendering it impossible for her secretary to print the responsive brief.

{¶ 3} During June, July and August 1994, respondent falsely told Keith that a pretrial hearing was scheduled for June 30, 1994, that the pretrial hearing was continued to August 8, 1994 because opposing counsel could not get an airline reservation to attend due to the airline traffic on the July 4 weekend, and that opposing counsel could not attend the second pretrial hearing because of severe flooding in Atlanta, Georgia. In August 1994, respondent falsely told Keith that a jury trial in her case was scheduled for September 22, 1994, and that respondent was preparing for trial and had both subpoenaed witnesses and hired an expert witness. Respondent then falsely told Keith that defendant had proposed a

settlement and that the trial was postponed because opposing counsel claimed he had suffered a massive heart attack. Respondent then falsely told Keith that she discovered that opposing counsel had lied about having a heart attack, that the common pleas judge had told respondent to seek sanctions, that the court awarded $5,000 to Keith as a sanction, and that the common pleas judge had issued a "gag" order in the case because of media interest. During the course of these false representations, respondent filed a notice of appeal from the summary judgment in the court of appeals.

{¶ 4} In late October 1994, respondent told Keith that a summary judgment had been entered in favor of defendant and speculated as to whether the common pleas judge had ever taken contributions from the defendant.

{¶ 5} It appears Keith went to the common pleas judge with tape recordings of her conversations with respondent and Keith, and the judge complained to relator. In her first response to relator's inquiries, respondent claimed that because she was hospitalized on June 24-25, 1994, she had asked her secretary to print the brief respondent had prepared and that the research respondent had performed could be found in Keith's file in respondent's office. There was no evidence respondent had been hospitalized, and in fact she had prepared no brief and her files contained no research.

### Count Two

{¶ 6} Respondent was retained by George W. Hammett III, in February 1993, after his previous counsel withdrew from representation following the filing of a voluntary dismissal of his case in federal court. Soon after she was hired and until November 1994, respondent falsely told Hammett that she had refiled his case. Respondent, however, did not refile the case and the time limitation for reopening the case expired. Several telephone conversations between respondent and Hammett were recorded without respondent's knowledge. Prior to becoming aware of the existence of these tapes, respondent provided the relator with false responses

regarding Hammett's complaint, and stated that she had spent numerous hours reviewing Hammett's file at federal court when, in fact, respondent had no personal knowledge of the status of his case.

Count Three

{¶ 7} Respondent was retained by Kevin Duden in January 1992 to pursue a breach-of-contract action. Throughout 1992, respondent falsely informed Duden that she was involved in settlement negotiations on his behalf. When these "negotiations" failed, respondent led Duden to believe that she had filed suit against Duden's former employer. Respondent further falsely informed Duden that a default judgment had been granted in his favor due to the defendant's failure to appear. After assuring Duden that he would receive the funds awarded by the court as a result of the default judgment, respondent informed him that the "judgment" had been appealed. In August 1994, respondent had Duden sign a "settlement agreement" with the defendant, and then in December 1994 told Duden that his settlement funds had been retained by the Internal Revenue Service. Respondent filed suit against Duden's former employer in January 1995; however, she never filed responses to any of the defendant's motions. The former employer's motion to dismiss was granted, and Duden was ordered to pay court costs.

Count Four

{¶ 8} Respondent was retained by Jack Gill in April 1992. Throughout 1992, respondent falsely informed Gill that she was involved in settlement negotiations on his behalf. When the "negotiations" broke down, respondent led Gill to believe that she had filed suit against his former employer. Respondent asked Gill to sign a "settlement agreement" and an Internal Revenue Service form, saying Gill would receive his settlement funds after so doing. Gill never received any funds, and on January 5, 1995 he filed a complaint with relator.

{¶ 9} In response to relator's inquiries regarding her representation of Duden and Gill, respondent provided minimal and unresponsive information.

4

Furthermore, respondent failed to attend a deposition with respect to her representation of Duden and Gill at the relator's office, falsely stating that she had been involved in an auto accident.

### Count Five

{¶ 10} Respondent was retained by Bonnie Foster in April 1994. In June 1994, respondent sent a letter to the Ohio Civil Rights Commission in which she stated that four women, one of whom was Foster, wished to file an employment discrimination complaint against their employer. Respondent asked the commission for the forms which would be necessary to complete the complaint; however, she made no further contact with the commission regarding this complaint. Throughout the months of April, May, June, July, and August 1994, respondent falsely informed Foster that she had filed for an injunction.

{¶ 11} The panel concluded that the respondent had violated the Disciplinary Rules and the Supreme Court Rules for the Government of the Bar as charged. The panel recommended the respondent be suspended for two years with one year stayed and respondent placed on probation. The panel further recommended that the local bar association assign one attorney to be the respondent's mentor during this suspension. The panel's final recommendation was that the respondent continue her psychiatric care. The board adopted the findings of fact, conclusions of law, and recommendation of the panel and further recommended that the cost of the proceedings be taxed to the respondent.

_____

*Geoffrey Stern*, Disciplinary Counsel, and *Lori J. Brown,* Assistant Disciplinary Counsel, for relator.

*George L. Forbes, Scott H. Schooler, Dennis N. LoConti* and *George W. Trumbo,* for respondent.

_____

*Per Curiam.*

**{¶ 12}** The purpose of disciplinary actions, Lord Mansfield wrote in 1778, "is not by way of punishment; but the Courts on such cases exercise their discretion, whether a man whom they have formerly admitted, is a proper person to be continued on the roll or not." *Ex parte Brounsall* (1778), 2 Cowp. 829, 830, 98 Eng.Rep. 1385. The guiding principle in this case, as in all our disciplinary proceedings, is the public interest and an attorney's right to continue to practice a profession imbued with public trust. We have previously emphasized that respect for the law and our legal system is the *sine qua non* of that right to continuance on the rolls. *Disciplinary Counsel v. Greene* (1995), 74 Ohio St.3d 13, 16, 655 N.E.2d 1299, 1301. To that we add respect for our judicial officers and for fellow members of the bar. All our Disciplinary Rules and all our Ethical Considerations are founded on respect for the law, for the court system, for the judges, for counsel and, of course, for clients. We have looked unfavorably on attorneys who have lied to the courts, *Disciplinary Counsel v. Greene, supra, Disciplinary Counsel v. McCrae* (1996), 75 Ohio St. 3d 511, 664 N.E.2d 523, and to their clients, *Disciplinary Counsel v. Fowerbaugh* (1995), 74 Ohio St.3d 187, 658 N.E.2d 237, and responded with appropriate suspensions.

**{¶ 13}** In this case respondent not only failed to represent her client, Keith, adequately but also lied to Keith about her case, lied about opposing counsel, impugned the integrity of both opposing counsel and the judge, and lied to counsel charged with investigating her actions. Respondent failed also to represent adequately clients Hammett, Duden, Gill and Foster and lied also to them about the status of their cases. Respondent also lied to Disciplinary Counsel charged with the investigation of the Duden and Gill complaints. Moreover, in the course of conversation with Hammett, respondent made disparaging remarks about her client, Keith.

**{¶ 14}** Respondent's pattern of conduct in this case, continually lying to her clients, lying to the court, and lying to Disciplinary Counsel in the attempt to

investigate her actions, leads us to the conclusion that respondent is not, at this time, a proper person to be continued on the rolls of those counsel privileged to practice law in the state of Ohio.

{¶ 15} Without in the least discounting the harm that respondent has caused her clients, it appears to us that respondent requires rehabilitation as much or more than discipline. The recommendation of the board that the respondent be suspended for two years with one year stayed and that, in addition, respondent be placed on probation with an assigned mentor, is inappropriate. Instead, we intend to provide respondent with as little or as much time as she requires to rehabilitate herself to the point where she can once more resume her commitment to the bench and bar and people of Ohio. Accordingly, we impose upon respondent an indefinite suspension from the practice of law in Ohio. Costs taxed to respondent.

*Judgment accordingly.*

MOYER, C.J., BOWMAN, PFEIFER, P. BRYANT and STRATTON, JJ., concur.

DOUGLAS and F.E. SWEENEY, JJ., dissent and would follow the recommendation of the board.

DONNA BOWMAN, J., of the Tenth Appellate District, sitting for RESNICK, J.

PEGGY BRYANT, J., of the Tenth Appellate District, sitting for COOK, J.

—————————