[This opinion has been published in *Ohio Official Reports* at 78 Ohio St.3d 57.]

AKRON BAR ASSOCIATION V. SNYDER.

**[Cite as Akron Bar Assn. v. Snyder, 1997-Ohio-95.]**

*Attorneys at law—Misconduct—Indefinite suspension—Engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation—Not delivering files to which client is entitled--Neglecting an entrusted legal matter—Failing to carry out contract of employment—Failing to maintain records of client funds and render accounts to client—Failing to promptly pay or deliver client's funds—Failing to cooperate in disciplinary investigation.*

(No. 96-2428--Submitted December 11, 1996--Decided March 26, 1997.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 95-47.

————————————

{¶ 1} On October 11, 1995, the relator, Akron Bar Association, filed an amended complaint charging respondent, Scott W. Snyder of Canal Fulton, Ohio, Attorney Registration No. 0030089, with violating several Disciplinary Rules while representing six clients during the years 1992 through 1994.

{¶ 2} Based upon a stipulation of the parties and testimony received at a hearing on February 23, 1996, a panel of the Board of Commissioners and Grievances of the Supreme Court ("board") found that during the period 1992 through 1994 respondent had violated the following Disciplinary Rules: DR 1-102(4) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), 2-110((A)(2) (not delivering files to which the client is entitled), 6-101(A)(3) (neglecting an entrusted legal matter), 7-101(A)(2) (failing to carry out a contract of employment entered into with a client), 9-102(B)(3) (failing to maintain records of client funds and render accounts to a client), and 9-102(B)(4) (failing to promptly pay or deliver funds to a client). The panel also

determined that respondent had violated Gov. Bar R. V(4)(G)(duty to cooperate in an investigation).

{¶ 3} Specifically, the panel found that in April 1992, Addie Hampton engaged respondent to handle the transfer of real estate in the probate court. Respondent did not complete the transfer, did not return Hampton's phone calls inquiring about the matter, and did not account for or return the $700 advance payment he received from Hampton until the day of the hearing of his disciplinary action.

{¶ 4} The panel also found that Wanda Hilling engaged respondent to represent her in a personal injury action on a one-third contingency fee basis. The settlement check, jointly payable to respondent and Wanda and Edward Hilling, was endorsed by the Hillings in April 1994, but, despite repeated inquiries, Wanda Hilling neither received from respondent an accounting for the settlement nor her share of the settlement until the day of the disciplinary hearing. Respondent had delivered a check payable to Wanda Hilling in December 1994, but it was returned for insufficient funds.

{¶ 5} The panel further found that Jacqueline Acker retained respondent in August 1993 to probate her father's will. Acker met with respondent four times between August 1993 and April 1994. After her stepmother died in May 1994, Acker retained respondent to probate her stepmother's will. After May 2, 1994, except for one July 1994 telephone conversation, Acker could no longer reach respondent despite repeated attempts by telephone and letter. In December 1994, Acker learned that neither will was filed and that neither estate was opened. Respondent's office was closed, and Acker had no way to retrieve her files.

{¶ 6} In addition, the panel found that Marjorie A. Vance retained respondent in July 1993 to represent her father's estate. A year later, she discovered that, contrary to respondent's assurances, he had not transferred her father's real

property to her mother and her brothers. Respondent also failed to respond to Vance's request that her original papers be returned to her.

{¶ 7} The panel further found that in June or July 1993, Becky Griggs retained respondent to represent her in a domestic relations case. Griggs next talked with respondent when he called on July 31, 1994 to tell her that because of an illness, an August 1, 1994 hearing in her case was canceled and he would contact her shortly. Griggs never heard from respondent again. Through her own efforts she found that the hearing was rescheduled for February 9, 1995, and after numerous unavailing attempts to contact respondent, Griggs appeared at the hearing without counsel.

{¶ 8} Finally, the panel found that after Laura L. Haag paid respondent $450 on July 16, 1992 to obtain a divorce for her, respondent took no steps to pursue the matter. On the day of the disciplinary hearing respondent repaid the $450 to Haag.

{¶ 9} At the hearing, the panel received testimony that respondent enjoyed a good reputation in the legal community until 1993 when he began to show symptoms of despondency. These symptoms began when his father died in March 1993. As his despondency increased, respondent began to neglect his legal work, and in October 1994 he was admitted to the hospital. He was treated by a psychiatrist for the next two months for "major depression." In January 1995, respondent gave up the practice of law and began driving a truck to earn income. In the initial stages of relator's investigation respondent's attitude was one of indifference. However, when a member of the relator's grievance committee impressed respondent with the seriousness of the proceedings, he did cooperate.

{¶ 10} In view of the fact that respondent has sought treatment for his depression, that he has shown remorse for the difficulties he caused his clients, and that he has reimbursed his clients for their monetary damages, the panel recommended that respondent be indefinitely suspended. The panel believed that

such a sanction would give respondent the opportunity to return to the practice of law sometime in the future.

{¶ 11} The board adopted the panel's findings, conclusions, and recommendation.

———————————

*John C. Weisensell*, *Michael C. Scanlon* and *Michael L. Stark*, for relator.
*Scott W. Snyder, pro se*.

———————————

***Per Curiam*.**

{¶ 12} We approve the findings of fact, conclusions of law, and recommendation of the board. From a review of the record we can understand the factors which caused respondent to neglect his professional duty to his clients. Nevertheless, we have a constitutional duty to oversee the conduct of the legal profession in Ohio, and we cannot condone respondent's failures to meet his responsibilities. An attorney's failure to carry out a legal matter entrusted to him and failure to cooperate in the ensuing disciplinary investigation have warranted suspension from the practice of law. *Disciplinary Counsel v. Liebold* (1990), 53 Ohio St.3d 128, 559 N.E.2d 749. In a previous case where we found that rehabilitation was as much or more appropriate than discipline, we imposed a sanction of indefinite suspension. *Disciplinary Counsel v. Trumbo* (1996), 76 Ohio St.3d 369, 667 N.E.2d 1186. We believe the same sanction is appropriate here. Respondent is hereby indefinitely suspended from the practice of law in Ohio. Costs taxed to respondent.

*Judgment accordingly.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

———————————