[This opinion has been published in *Ohio Official Reports* at 80 Ohio St.3d 196.]

**DAYTON BAR ASSOCIATION *v*. SHAMAN.**

**[Cite as *Dayton Bar Assn. v. Shaman*, 1997-Ohio-78.]**

*Attorneys at law—Misconduct—Indefinite suspension—Failure to fulfill responsibilities as a lawyer.*

(No. 97-871—Submitted September 9, 1997—Decided November 5, 1997.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 94-78.

————————————

{¶ 1} On December 5, 1994, relator, Dayton Bar Association, filed an eleven-count complaint with the Board of Commissioners on Grievances and Discipline of the Supreme Court ("board") against respondent, Theodore R. Shaman, Jr., of Dayton, Ohio, Attorney Registration No. 0022633. In the complaint, relator charged respondent with violating DR 1-102(A)(4) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), 2-110(A)(2) (failing to take reasonable steps to avoid foreseeable prejudice to the rights of his clients before withdrawing from employment), 6-101(A)(1) (handling legal matters which he knew he was not competent to handle), 6-101(A)(2) (handling legal matters without adequate preparation), 6-101(A)(3) (neglecting legal matters entrusted to him), 7-106(A) (disregarding the ruling of a tribunal), 9-102(B)(1) (failing to promptly notify a client of funds owed to the client), and 9-102(B)(4) (failing to pay or deliver funds to clients which they were entitled to receive). Relator also charged respondent with violating Canon 1 (failing to maintain the integrity and competence of the legal profession), 6 (failing to represent clients competently), and 9 (failing to avoid the appearance of professional impropriety) of the Code of Professional Responsibility. The facts giving rise to these charges, as set forth in relator's complaint, are summarized as follows.

**{¶ 2}** In May 1993, relator received a complaint from Michael J. Kepler. Kepler employed respondent to transfer a Colorado divorce proceeding to Ohio. Respondent was unable to complete the transfer after assuring Kepler that it would be a simple process. In addition, respondent improperly advised Kepler with respect to certain matters pertaining to Kepler's bankruptcy case. Respondent also failed to keep appointments with Kepler, did not return Kepler's telephone messages, and refused receipt of a certified letter from Kepler.

**{¶ 3}** On March 20, 1993, relator received a complaint from Sandra L. Ouimet concerning a $600 retainer paid by Ouimet to respondent. In November 1989, Ouimet met with respondent for purposes of obtaining a divorce. Ouimet was told by respondent that the initial consultation was free. Ouimet decided not to pursue a divorce at the time and she did not meet again with respondent until December 1992. At this meeting, Ouimet became offended and left when respondent made a comment to her regarding her husband. Ouimet asked that the $600 retainer be returned but was told by respondent that it would take a short while to retrieve the file. Later, respondent contacted Ouimet and informed her that he had drafted a complaint for divorce. Ouimet never authorized respondent to draft the complaint and he did not return Ouimet's telephone calls. Eventually, respondent returned to Ouimet $275 of the $600 retainer.

**{¶ 4}** In May 1993, Colonel Joe N. Rogers contacted relator concerning respondent's misconduct in handling a domestic relations matter for him. In April 1992, respondent was retained by Rogers for purposes of terminating alimony and insurance payments owed by Rogers under a divorce decree. Respondent falsely told Rogers that a hearing in the matter had to be continued because the referee assigned to the case had been disqualified when in fact the referee was no longer associated with the court and had never actually been assigned to the case. Respondent also falsely told Rogers that a scheduled hearing had to be continued because the clerk had failed to obtain proper service. The clerk, however, did not

obtain service in the case because respondent had never filed the necessary papers in the first instance. Respondent did not return Rogers's telephone calls, and respondent also refused to cooperate with relator's investigation of the allegations made by Rogers.

{¶ 5} On August 26, 1993, relator received a complaint with respect to a matter involving Robert Madewell. In 1992, respondent falsely informed Madewell that a settlement conference had occurred in his wrongful discharge case and that nothing meaningful had occurred. Respondent also falsely told Madewell in 1992 that the defendant was attempting to have a new trial date set and that a potential conflict existed with respect to the judge assigned to the case. In actuality, Madewell's case had been dismissed with prejudice by the trial court in November 1991 for failure by respondent to comply with discovery requests.

{¶ 6} In January 1994, Candice Goldflies contacted relator about respondent. In April or May 1992, Goldflies gave respondent a $2,000 retainer to handle a lawsuit in Waynesville, Ohio. After paying the retainer, Goldflies never received any correspondence from respondent regarding the litigation. Goldflies sent respondent two letters requesting that the retainer be refunded. Respondent did not reply to either letter. Respondent also failed to cooperate with relator's investigation of the matter.

{¶ 7} On August 11, 1994, Larry and Phyllis Blakeley contacted relator about respondent's misconduct with respect to two situations. In June 1991, the Blakeleys employed respondent to represent them concerning an automobile accident involving Phyllis. The day before trial, and without prior notice, respondent withdrew from the case. In a separate matter, Larry hired respondent to represent him with respect to a drug test that had been administered to Larry when he was a truck driver. Respondent informed Larry that he would file a lawsuit regarding the matter. Respondent never filed the suit and, despite Larry's request, respondent failed to turn over the file to Larry's new attorney.

**{¶ 8}** On August 16, 1994, relator received a complaint from Ruth Slone-Stiver. She informed relator that respondent had improperly received and accepted $31,403.07 in legal fees from a bankruptcy estate. Respondent represented the debtor, but he failed to file a fee application or obtain court approval before accepting the fees. Slone-Stiver wrote respondent a letter demanding that the money be repaid with interest so that it could be given to creditors. Respondent failed to repay the money, and he did not provide Slone-Stiver with certain documents that she had requested.

**{¶ 9}** On August 22, 1994, Todd Williamson filed a complaint with relator. In November 1993, Williamson paid respondent a $650 retainer to file a bankruptcy petition for him. Later, in March 1994, Williamson paid respondent an additional $20 to amend the petition and add his house to the proceedings. Respondent did not timely file the petition, and he did not file necessary papers in the case. As a result, there was an enforcement of a lien on Williamson's home, and he was also forced to incur additional utility payments on the foreclosed residence. Respondent also failed to appear at a scheduled Section 341 hearing.

**{¶ 10}** On September 1, 1994, Jean Rogers filed a complaint with relator. Rogers hired respondent to obtain a support order against her former husband. She paid respondent a $400 retainer. Rogers's former husband died before respondent took any action on the matter. Respondent did not file anything with the trial court, and he did not refund Rogers's retainer.

**{¶ 11}** Respondent filed an answer to the allegations contained in relator's complaint. Thereafter, relator and respondent filed a stipulation in which respondent withdrew his answer and admitted to much of the misconduct with which he had been charged. With respect to the allegations involving Kepler, Colonel Rogers, Madewell, Goldflies, Williamson, and the Blakeleys, respondent stipulated that his misconduct was "in violation of Canon No. 6 of the Code of Professional Responsibility and Disciplinary Rules." Respondent also stipulated

4

that he would make restitution to Goldflies in the amount of $1,200. As to the allegations concerning Ouimet and Jean Rogers, respondent stipulated that his actions were "in violation of Canon No. 9 of the Code of Professional Responsibility and Disciplinary Rules." Respondent further stipulated that he would make restitution to Ouimet in the amount of $325 and that he would return $200 to Rogers. Additionally, with respect to the Slone-Stiver matter, respondent agreed to "comply with the order of the Bankruptcy Court." The parties also set forth in the stipulation that the appropriate sanction should be an indefinite suspension from the practice of law.

{¶ 12} On April 26, 1996, a three-member panel appointed by the board held a hearing with respect to relator's complaint. At the hearing, respondent did not dispute the allegations contained in the complaint. Rather, the testimony focused mainly on matters of mitigation.

{¶ 13} Respondent stated that he has always considered himself to be an "honorable" and "decent" lawyer and that he has "served in public trust positions for years." Respondent testified that he had improperly relied on a secretary who had problems and quit, that the daily rigors of private practice as a sole practitioner became too much for him to handle, that he went through a period of severe depression, and that he is currently taking medication for his illness. Respondent expressed remorse for the problems that he caused his clients and family. Except for one or two pending criminal matters, respondent has left the practice of law and is currently working for his wife, who owns a retail floral shop. Respondent's immediate goal is to secure employment in the area of teaching and to obtain a Master's degree in English.

{¶ 14} Upon consideration of the evidence, a majority of the panel rejected the joint recommendation of the parties, that respondent be indefinitely suspended from the practice of law, and instead found that respondent should be permanently disbarred. One member dissented and agreed with the parties that the sanction

should be indefinite suspension. The board adopted the findings of fact, conclusions of law, and recommendation of the majority of the panel. The board further recommended that costs be taxed to respondent.

———————————

*Thomas P. Whelley II*, for relator.

*William I. Shaman*, for respondent.

———————————

**DOUGLAS, J.**

**{¶ 15}** Respondent and relator in this case agreed that respondent's misconduct warranted an indefinite suspension from the practice of law in this state. Two of the three panel members and the board disagreed, concluding that the proper sanction under the circumstances was permanent disbarment.[1] We accept the findings of the board and agree that respondent failed miserably in his responsibilities to his clients. However, we do not agree with the board's recommendation that respondent be permanently disbarred from the practice of law.

**{¶ 16}** In *Cleveland Bar Assn. v. Rea* (1997), 78 Ohio St.3d 71, 676 N.E.2d 514, when an attorney neglected numerous legal matters entrusted to her, improperly retained retainers which she did not earn or return, and lied to various clients, we ordered an indefinite suspension. We also ordered an indefinite suspension in *Akron Bar Assn. v. Snyder* (1997), 78 Ohio St.3d 57, 676 N.E.2d 504, where, among other things, the attorney neglected several legal matters entrusted

---

1. In the stipulation, relator and respondent agreed that any "disciplinary action taken against the Respondent should be in the form of an indefinite suspension of his privileges and right to practice law in the State of Ohio." However, "[n]othwithstanding the agreement of Relator and Respondent on a recommended sanction for Respondent, the hearing panel and the Board are not bound by the joint recommendation and retain sole power and discretion to make a final recommendation to the Ohio Supreme Court on the appropriate sanction." Section 3(D) on the Rules and Regulations Governing Procedures on Complaints and Hearings before the Board of Commissioners on Grievances and Discipline of the Supreme Court.

to him, failed to pay or deliver funds owing to clients, failed to deliver files to which a client was entitled, and failed to cooperate in a disciplinary investigation. See, also, *Disciplinary Counsel v. Palmer* (1994), 71 Ohio St.3d 174, 642 N.E.2d 1087 (indefinite suspension for lying to several clients and neglecting their interests), and *Disciplinary Counsel v. Chavers* (1990), 55 Ohio St.3d 18, 562 N.E.2d 1386 (indefinite suspension for accepting numerous retainers and not performing work requested, failing to return unearned fees, and failing to cooperate in the disciplinary investigation). Respondent's misconduct in this case is substantially similar to what occurred in *Snyder*, *Palmer*, and *Chavers.* Also, compare, *Disciplinary Counsel v. Trumbo* (1996), 76 Ohio St.3d 369, 667 N.E.2d 1186 (indefinite suspension for attorney's neglecting several legal matters entrusted to her, continually lying to her clients, lying to the court, and lying to Disciplinary Counsel in the attempt to investigate her actions). Clearly, respondent's actions, while outrageous and inexcusable, are not any more egregious than what occurred in *Snyder*, *Palmer*, *Chavers,* and *Trumbo*.

{¶ 17} Further, when imposing a sanction, we will consider not only the duty violated, but the lawyer's mental state, the actual injury caused, and whether mitigating factors exist. *Cuyahoga Cty. Bar Assn. v. Boychuk* (1997), 79 Ohio St.3d 93, 97, 679 N.E.2d 1081, 1084. In this case, we note respondent's personal problems that existed at the time of the violations and the fact that he has taken steps to resolve his problems. Respondent is currently receiving treatment for his depression and he has agreed to provide restitution to aggrieved clients. We also note that respondent has shown genuine remorse for the problems that he has caused his clients and family.

{¶ 18} Accordingly, we believe that the appropriate sanction under the circumstances for respondent's failure to fulfill his responsibilities as a lawyer is an indefinite suspension. Pursuant to the penalty of indefinite suspension, respondent is, of course, precluded from filing a petition for reinstatement until a

period of at least two years has expired subsequent to the entry of our order suspending him from the practice of law.  See Gov.Bar R.  V(10)(B).  Moreover, respondent's reinstatement, if ever, will be subject to the conditions of Gov.Bar R. V(10)(B) *et seq*.  Costs taxed to respondent.

*Judgment accordingly.*

RESNICK, PFEIFER and LUNDBERG STRATTON, JJ., concur.

MOYER, C.J., F.E. SWEENEY and COOK, JJ., dissent.

———————————

**COOK, J., dissenting.**

{¶ 19} I agree with the recommendation of the board that respondent be permanently disbarred.  I, therefore, respectfully dissent from the decision of the majority to indefinitely suspend this respondent.

MOYER, C.J., and F.E. SWEENEY, J., concur in the foregoing dissenting opinion.

———————————