[This decision has been published in *Ohio Official Reports* at 97 Ohio St.3d 230.]

OFFICE OF DISCIPLINARY COUNSEL *v.* GOLDEN.

[Cite as *Disciplinary Counsel v. Golden*, 2002-Ohio-5934.]

*Attorneys at law—Misconduct resulting directly from clinical depression—Indefinite suspension—Engaging in a pattern of neglect with respect to client matters—Failing to cooperate in ensuing disciplinary investigation.*

(No. 2002-0724—Submitted August 27, 2002—Decided November 13, 2002.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 00-47.

_____

**Per Curiam.**

{¶1} We must decide in this case how to appropriately sanction respondent, Shelby Diane Golden of Lima, Ohio, Attorney Registration No. 0039787, who violated a series of Disciplinary Rules while representing clients in eight different cases, failed to cooperate with relator, Disciplinary Counsel, in the investigation of her misconduct, and did not update her business address with the Office of Attorney Registration as required. The Board of Commissioners on Grievances and Discipline, after finding that respondent's debilitating clinical depression contributed significantly to her misconduct, recommended a sanction less severe than an indefinite suspension from the practice of law in Ohio. We agree that respondent's depression is a mitigating influence sufficient to warrant rejection of the disbarment recommended by relator. However, misconduct of this magnitude must be met with an indefinite suspension for the public's protection, and therefore we find this sanction appropriate.

{¶2} On February 6, 2001, relator filed the instant amended complaint and charged respondent with ten counts of misconduct. A panel of the board heard the cause and, based on the parties' stipulations and respondent's testimony, made the

following findings of fact and conclusions of law with respect to Counts I through IX.[1]

Misconduct

**{¶3}** As to Count I, the evidence showed that in 1999, respondent accepted a $250 retainer from a client, failed to perform any service for the client, and then ignored the client's request that the money be returned. For this, the panel found respondent in violation of DR 2-110(A)(3) (failing to promptly return unearned fees upon withdrawing from employment) and 6-101(A)(3) (neglecting an entrusted legal matter). Because respondent did not respond to relator's letter of inquiry concerning this client's grievance, the panel also found a violation of Gov.Bar R. V(4)(G) (failing to cooperate in a disciplinary investigation).

**{¶4}** With respect to Count II, the evidence showed that respondent agreed in February 1997 to represent a couple in a collection action and accepted a $1,500 fee. During the next two and one-half years, respondent failed to file a complaint in the action, yet she represented to her clients that the action was pending in court. And in March 1999, respondent misrepresented to her clients that the matter would be set for a scheduling conference before a Logan County common pleas court judge. That judge later learned of respondent's actions and filed a grievance with relator. The panel found that respondent's conduct violated DR 1-102(A)(4) (engaging in fraud, deceit, dishonesty, or misrepresentation), 2-110(A)(3), 6-101(A)(3), and 7-101(A)(2) (failing to carry out a contract for professional services). Because respondent again failed to respond to relator's letter of inquiry concerning this grievance, the panel found another violation of Gov.Bar R. V(4)(G).

**{¶5}** As to Count III, the evidence showed that respondent represented a client during her 1997 divorce and that those proceedings required respondent to

---

1. A tenth count of misconduct found by the panel was later discounted by the board.

file a Qualified Domestic Relations Order ("QDRO") to transfer funds from an IRA to the client. Respondent never filed the QDRO but misled the client into believing that she had. The panel found this conduct to violate DR 1-102(A)(4), (5) (engaging in conduct prejudicial to the administration of justice), and (6) (engaging in conduct that adversely reflects on her fitness to practice law); 6-107(A)(3) [sic, 6-101(A)(3)]; and 7-101(A)(2).

**{¶6}** With respect to Count IV, the evidence showed that respondent represented another client in the dissolution of her marriage and that those proceedings also required respondent to file a QDRO. Respondent again did not file the QDRO and misrepresented to her client that she had. The panel determined that this conduct also violated DR 6-101(A)(3) and 1-102(A)(4), (5), and (6). Respondent's failure to reply to relator's letter of inquiry concerning this client's grievance prompted the panel to find yet another violation of Gov.Bar R. V(4)(G).

**{¶7}** As to Count V, the panel found a violation of Gov.Bar R. VI(1)(D) because respondent went to work as an assistant city prosecutor in November 1999 and did not update her office address with the Office of Attorney Registration until at least October 2001. As a result, the clients from respondent's private practice, some of whom needed their files, the return of unearned fees, and status reports, had trouble contacting her about their cases.

**{¶8}** With respect to Count VI, the evidence showed that while representing another client subsequent to his 1995 divorce, respondent advised the client that he owed only $60 in weekly support payments when, in fact, he owed $100 per week pursuant to a judgment entry. Respondent misrepresented the amount of support ultimately ordered because she thought she had made a mistake in agreeing to a higher amount in an earlier court order. As a result, the client accumulated arrearages during 1996 through 1999 in his spousal support account with the Child Support Enforcement Agency. The client received notices from the agency

concerning the arrearages, which he took to respondent, and she promised to take care of the problem.

{¶9} In 1998, respondent's client wanted to buy a new house. To assist him, respondent altered a copy of the judgment entry requiring the client's $100 weekly support payment to reflect that he owed only $60 per week. Respondent gave the altered copy to the client for his use in obtaining a loan, and his loan was approved.

{¶10} Also in 1998, respondent asked this client to start sending his support payments to her so that she could make sure the Child Enforcement Support Agency received them. For the next several months, respondent deposited these checks into her client trust account and then made support payments from the same account, partially making up the difference between what her client had paid her for this purpose and the amount actually owed. But eventually, the accumulated arrearages in her client's account caused the agency to garnish the client's monthly Social Security checks. The client bounced some checks as a result.

{¶11} Then, from February 1999 through March 2000, respondent paid directly into the client's checking account amounts representing the difference between the client's support payments and the amount actually owed. Respondent misrepresented to the client that the Child Support Enforcement Agency was making these payments. In July 1999, the agency notified respondent's client that his account was over $3,700 in arrears. Respondent also paid this overdue amount.

{¶12} The panel concluded from respondent's misrepresentations and commingling in connection with Count VI that she had violated DR 1-102(A)(4) and (5), 5-103(B) (advancing financial assistance to a client), 7-101(A)(3) (causing client damage or prejudice), 7-102(A)(3) (concealing that which an attorney is required by law to reveal), and 9-102 (failing to maintain client funds in an identifiable bank account).

**{¶13}** As to Count VII, the panel found a violation of DR 6-101(A)(3) because respondent was hired in 1998 to administer a client's estate but did not timely conclude the process.

**{¶14}** With respect to Count VIII, the evidence showed that while representing a trustee in November 1999, respondent failed to timely file an accounting of the trust assets and thereafter did not reply to the court's or her client's inquiries about the overdue accounting. In February 2000, the trustee terminated respondent's employment, but respondent did not promptly turn the client's file over to the trustee's new attorney. The panel concluded that respondent had thereby violated DR 2-110(A)(2) (withdrawal from employment without reasonable steps to return client's papers and other property), and 6-101(A)(3).

**{¶15}** As to Count IX, the evidence showed that in representing another client in her 1996 divorce, respondent again was required to file a QDRO so that the client could receive a portion of her former husband's 401(k) pension. Respondent did not file the QDRO during 1996, 1997, or 1998.

**{¶16}** When her client was finally able to reach respondent and complain that she was not receiving any money from the QDRO, respondent falsely told the client that the QDRO had been filed. Respondent also told the client that she had had to sue the administrator of the 401(k) plan and that various proceedings were underway. To cover these untruths, respondent made 22 monthly payments to the client in three years, all the while explaining that the proceeds were from the pending litigation. In September 2000, the client discovered that respondent had not filed any suit against the administrator and that the payments she had been receiving were not from the administrator or any court. Respondent, who by that time had paid her client over $9,000, stopped making these payments.

**{¶17}** The panel found that respondent's conduct in connection with Count IX violated DR 1-102(A)(4) and (5); 5-103(B); 7-101(A)(1), (2), and (3); and 7-

102(A)(3). Because respondent had also failed to respond to notice of this client's grievance, the panel further found a violation of Gov.Bar R. V(4)(G).

Recommendation

{¶18} In recommending a sanction for this misconduct, the panel considered the factors commonly offered to mitigate the impact of an attorney's misconduct, including that respondent had conceded the egregious effect of her infractions and had already made restitution to her clients. Respondent also established that she had no prior history of professional discipline. In addition, the panel noted that while respondent had frequently failed to respond to relator's initial investigative inquiries, she retained an attorney and cooperated fully once relator had filed its complaint.

{¶19} But by far the most compelling evidence for the panel was that of respondent's psychological and emotional decline during the events at bar. In fact, after hearing respondent's explanation of her overwhelming personal and professional misfortunes, the panel sua sponte suggested a psychiatric evaluation, and respondent and relator agreed to this assessment. The panel reviewed the comprehensive psychiatric report that respondent submitted and specifically found that her clinical depression was the direct cause of the acts leading to this complaint. Panel members also noted that while respondent had acted dishonestly, these acts were not the result of conventional self-interest, but rather manifested respondent's ill-conceived efforts to help her clients and fix problems with which she could no longer cope.

{¶20} Based on these considerations, the panel decided against disbarment and recommended a two-year suspension from the practice of law commencing January 1, 2001, the date on which respondent voluntarily withdrew herself from practice. The panel further recommended that the last six months of this period be suspended, that respondent be placed on probation for these six months, and that a monitoring attorney be appointed pursuant to Gov.Bar R. V(9)(B) for respondent

during her probation. The board adopted the panel's findings of fact, conclusions of law, and recommended sanction with respect to Counts I through IX.

Sanction Upon Review

{¶21} Upon review, we agree that respondent committed the disciplinary violations as found by the board in these nine counts of misconduct. Moreover, based on the stipulations, respondent's testimony, and relator's objections to the board's report, we further find that respondent violated DR 7-101(A)(2) in connection with Counts I, IV, and VII; DR 1-102(A)(4) in connection with Count VII; and Gov.Bar R. V(4)(G) in connection with Count III.

{¶22} We also accept as mitigating the factors identified by the board. See *Cleveland Bar Assn. v. Dixon,* 95 Ohio St.3d 490, 2002-Ohio-2490, 769 N.E.2d 816, ¶19, and *Cincinnati Bar Assn. v. Stidham* (2000), 87 Ohio St.3d 455, 463, 721 N.E.2d 977 (mitigation evidence may consist of an attorney's mental or emotional illness as well as the factors enumerated in Section 10 of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline). But these factors notwithstanding, our decision must still account for respondent's having breached her duty to her clients, the public, and the profession so many times and for so many years. Accordingly, we have decided to impose an indefinite suspension from the practice of law.

{¶23} When attorneys engage in a pattern of neglect and fail to cooperate in an ensuing disciplinary investigation, the misconduct ordinarily warrants an indefinite suspension. *Akron Bar Assn. v. Snyder* (1999), 87 Ohio St.3d 211, 212, 718 N.E.2d 1271; *Disciplinary Counsel v. Henderson* (1999), 87 Ohio St.3d 219, 221, 718 N.E.2d 1277; *Warren Cty. Bar Assn. v. Lieser* (1997), 79 Ohio St.3d 488, 490, 683 N.E.2d 1148. Moreover, when these infractions are coupled with dishonesty in any form, an indefinite suspension is all but guaranteed. On the other hand, when misconduct permeates a practice in the way it has in this case,

disbarment is often the only sanction available for preserving the public confidence in the judicial system. *Cleveland Bar Assn. v. Glatki* (2000), 88 Ohio St.3d 381, 726 N.E.2d 993.

{¶24} Attorneys are obligated to secure medical or other assistance they need before any client suffers from the attorney's professional incompetence, whatever the source. But having said this, we also realize that the practice of law can be overwhelming. Thus, when an attorney's misconduct results directly from clinical depression as it does here, we have tempered our disposition to see whether the attorney is able, with the help of appropriate medical care, to merit the public's confidence again. *Stidham*, 87 Ohio St.3d 455, 464, 721 N.E.2d 977.

{¶25} We consider respondent a good risk for this level of lenience. Accordingly, respondent is hereby suspended from the practice of law in Ohio indefinitely. During such suspension, respondent shall seek and continue in professional psychiatric care for the purpose of establishing her restored professional competence. Respondent's reinstatement shall be conditioned on medical proof of competence to return to the practice of law in addition to the requirements established in Gov.Bar R. V(10). Costs are taxed to respondent.

Judgment accordingly.

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

_____

Jonathan E. Coughlan, Disciplinary Counsel, and Lori J. Brown, First Assistant Disciplinary Counsel, for relator.

Jeffrey V. Hawkins, for respondent.

_____