STARK COUNTY BAR ASSOCIATION *v.* MCKINNEY.

[Cite as *Stark Cty. Bar Assn. v. McKinney*, 101 Ohio St.3d 23, 2003-Ohio-6743.]

*Attorneys at law — Misconduct — Indefinite suspension, effective July 1, 2002 — Engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation — Neglecting an entrusted legal matter — Failing to seek client's lawful objectives — Failing to carry out contract for professional services — Prejudicing or damaging client during course of professional relationship — Failing to render appropriate accounts to clients.*

(No. 2003-1110 — Submitted August 26, 2003 — Decided December 31, 2003.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 02-54.

————————————

**Per Curiam**.

{¶1} Respondent, Patrick McKinney of Canton, Ohio, Attorney Registration No. 0058443, was admitted to the practice of law in Ohio in 1992. On January 27, 2003, relator, Stark County Bar Association, charged respondent in an amended multicount complaint with various violations of the Code of Professional Responsibility. A panel appointed by the Board of Commissioners on Grievances and Discipline heard the cause on May 16, 2003, and, based largely on comprehensive stipulations, made findings of fact, conclusions of law, and a recommendation.

{¶2} The parties stipulated to respondent's neglect and other misconduct in the course of representing eight different clients. With respect to the first client, the panel found that in August 2000, respondent accepted a $750 retainer

to defend the client against a citation for driving under the influence of alcohol. Respondent provided some legal services but failed to notify the client of hearings in the case, and the client, as a result, was served with an arrest warrant. The client ultimately forfeited his $200 cash bond and incurred $1,250 in legal expenses to retain new counsel. The panel found that respondent had thereby violated DR 6-101(A)(3) (neglecting an entrusted legal matter), 7-101(A)(1) (failing to seek the client's lawful objectives), 7-101(A)(2) (failing to carry out a contract for professional services), and 7-101(A)(3) (causing a client damage or prejudice during course of professional relationship).

{¶3} As to the second client, the panel found that in August 2001, respondent accepted a $200 retainer to represent the client in an action for forcible entry and detainer. Respondent failed to file the client's action and did not return the client's telephone calls or account for his retainer. This client was also forced to engage new counsel to pursue his claim and incurred an additional $300 in legal fees. The panel found that respondent had thereby violated DR 6-101(A)(3); 7-101(A)(1), (2), and (3); and 9-102(B)(3) (failing to render appropriate accounts).

{¶4} With respect to the third client, the panel found that in October 2000, respondent accepted $600 from the client to complete a separation agreement and file accompanying dissolution documents. Respondent prepared the separation agreement but did not file anything in court. Respondent also repeatedly failed to return the client's telephone calls and did not account for the client's retainer. The panel found that respondent had thereby violated DR 6-101(A)(3); 7-101(A)(1), (2), and (3); and 9-102(B)(3).

{¶5} As to the fourth client, the panel found that in June 2001, respondent accepted $200 from the client to secure the expungement of a 1985 misdemeanor conviction in Alaska. Respondent stopped communicating with his client, did not obtain the expungement, and never accounted for the client's

retainer. The panel found that respondent had thereby violated DR 6-101(A)(3); 7-101(A)(1), (2) and (3); and 9-102(B)(3).

{¶6} With respect to the fifth client, the panel found that in January 2000, respondent accepted $500 to file for divorce on the client's behalf. Respondent promised to file the divorce many times, but he never did, nor did he account for the client's retainer. Respondent also once told the client that he had filed for the divorce when he had not. The panel found that respondent had thereby violated DR 1-102(A)(4) (engaging in conduct involving dishonesty, fraud, deceit or misrepresentation); 6-101(A)(3); 7-101(A)(1), (2), and (3); and 9-102(B)(3).

{¶7} As to the sixth client, the panel found that in August 2001, respondent accepted $380 to represent the client in postdivorce custody proceedings. Respondent did perform some other legal services on the client's behalf; however, he never completed the custody work for which he had been engaged, and he did not account for her money. The panel found that respondent had thereby violated DR 6-101(A)(3); 7-101(A)(1), (2), and (3); and 9-102(B)(3).

{¶8} With respect to the seventh client, the panel found that in July 2001, respondent accepted $500 to initiate a foreclosure action on the client's behalf and a $210 check made out for the necessary filing fees. Respondent never filed the foreclosure suit and did not account for the client's retainer. Respondent also told the client that he had filed suit when he had not. The panel found that respondent had thereby violated DR 1-102(A)(4); 6-101(A)(3); 7-101(A)(1), (2), and (3); and 9-102(B)(3).

{¶9} The panel found that the eighth client retained respondent in March 2001 to represent her and her husband in an auto accident claim. Respondent falsely told the client that he had been in contact with insurance company representatives and was awaiting a settlement offer. Thereafter, respondent stopped returning the client's telephone calls. The client ultimately resolved the

claim with the insurance company on her own.  The panel found that respondent had thereby violated DR 1-102(A)(4), 6-101(A)(3), and 7-101(A)(1) and (2).

{¶10} In recommending a sanction for this misconduct, the panel reviewed the mitigating and aggravating considerations listed in Section 10 of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline.  As aggravating features, the panel found multiple offenses, a pattern of misconduct, and failure to cooperate in relator's investigation, although respondent did participate fully in the panel hearing.  The panel also found that several of respondent's clients were of modest means and particularly vulnerable to the monetary harm respondent caused them, including one client who represented that she became physically ill from the effects of his neglect.  As mitigating features, the panel found that respondent had no prior history of disciplinary infractions and had not acted out of self-interest.  Moreover, respondent had promised to repay the first client's $1,150, the second client's $500, the third client's $600, the fourth client's $200, the fifth client's $500, the sixth client's $380, and the seventh client's $500, although he had not yet done so.

{¶11} In addition, respondent testified that a doctor treated him in February 2002 for chest and abdominal pain, that his symptoms were related to stress-induced anxiety, and that these symptoms had contributed to his decision to close his law practice in June 2002 and to pursue a career in sales.  To corroborate this testimony, respondent provided a letter from his family physician, advising that respondent suffered from an anxiety disorder during this time and that closing his practice was a plausible reaction to the stress respondent reported.

{¶12} Respondent did not offer any other medical evidence.  Thus, he did not show that he had completed a sustained period of successful treatment or that his medical prognosis would allow him, with conditions if necessary, to return to the competent, ethical, and professional practice of law.  See Section 10(B)(2)(g)

4

of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline. Moreover, although respondent's doctor had referred him to a psychiatrist, respondent testified that he had scheduled an appointment but had not yet gone. This and the lack of evidence specific to respondent's treatment and prognosis prevented the panel from finding respondent's medical condition especially mitigating.

{¶13} The parties offered a joint recommendation—that respondent be suspended from the practice of law for one year, with a six-month stay on the condition that he engage in no further misconduct and successfully complete treatment for his anxiety disorder. However, the panel found the medical evidence before it insufficiently mitigating and recommended that respondent's license to practice law be suspended indefinitely, effective July 1, 2002. The panel recommended that respondent be required to show in any petition for reinstatement that (1) he has undergone a sustained period of successful treatment for his disorder; (2) he is able to return to the competent and ethical practice of law, according to a qualified health care professional; and (3) he has made restitution in the amounts of $1,150, $500, $600, $200, $500, $380, and $500, and returned the $210 check, to the appropriate clients. The board adopted the panel's findings of misconduct and recommendation.

{¶14} Respondent has not objected to the board's report, and we see no reason to depart from it. Based on respondent's conceded neglect and other misconduct, we agree that respondent violated DR 1-102(A)(4); 6-101(A)(3); 7-101(A)(1), (2), and (3); and 9-102(B)(3) as found by the board relative to the eight clients previously described. We also find the recommended sanction and conditions appropriate, inasmuch as we have imposed an indefinite suspension, with conditions, for a pervasive pattern of neglect, uncooperativeness, and dishonesty, even where mental disability has been established. *Disciplinary Counsel v. Golden,* 97 Ohio St.3d 230, 2002-Ohio-5934, 778 N.E.2d 564.

**{¶15}** Accordingly, respondent is hereby suspended indefinitely from the practice of law in Ohio, effective July 1, 2002. In any petition for reinstatement that he files pursuant to Gov.Bar R. V(10), respondent shall show, in addition to the requirements of that rule, that (1) he has undergone a sustained period of successful treatment for his disorder; (2) he is, in the opinion of a qualified health-care professional, able to return to the competent and ethical practice of law, with conditions, if necessary; and (3) he has made restitution in the amounts of $1,150, $500, $600, $200, $500, $380, and $500, and has returned the $210 check to the appropriate clients. Costs are taxed to respondent.

Judgment accordingly.

MOYER, C.J., RESNICK, F.E. SWEENEY, PFEIFER, LUNDBERG STRATTON, O'CONNOR and O'DONNELL, JJ., concur.

_____

Richard S. Milligan, and Gregory A. Beck, for relator.

Patrick McKinney, pro se.

_____