DAYTON BAR ASSOCIATION ET AL. *v.* LANDON.

[Cite as *Dayton Bar Assn. v. Landon,*
108 Ohio St.3d 173, 2006-Ohio-546.]

(No. 2005–1196—Submitted September 21, 2005—Decided February 22, 2006.)

**Per Curiam.**

{¶ 1} Respondent, David H. Landon of Dayton, Ohio, Attorney Registration No. 0029185, was admitted to the practice of law in Ohio in 1979.

{¶ 2} On October 21, 2004, relator Disciplinary Counsel charged respondent in a three-count complaint with violations of the Code of Professional Responsibility. On October 28, 2004, relator Dayton Bar Association charged respondent in an amended complaint with five additional counts of professional misconduct. The cases were consolidated and heard by a panel of the Board of Commissioners on Grievances and Discipline. Based on the parties' stipulations and other evidence, the panel made findings of fact, conclusions of law, and a recommendation, all of which the board adopted.

### Misconduct

{¶ 3} Respondent stipulated not only to the eight counts of misconduct charged in the complaints, he also stipulated to three more counts, waiving all his due process rights as to notice and hearing.

## Count I

{¶ 4} Respondent has not maintained professional-liability insurance since November 22, 2002, and has not advised clients of this fact. Respondent conceded and the board found that his conduct violated DR 1–104 (requiring a lawyer to notify a client if he does not carry sufficient professional-liability insurance).

## Counts II and III

{¶ 5} A client paid respondent $770 to help her obtain a legal separation from her spouse. Respondent neglected the case, and, in January 2003, the client went to respondent's office to ask about the delay. Respondent falsely told the client that he had not been able to serve the separation complaint "due to the holidays." Respondent knew at the time that he had not filed the case in court and had no legal papers ready with which to serve the husband. Despite her requests, respondent also did not refund his client's money.

{¶ 6} Respondent conceded and the board found that he had violated DR 6–101(A)(3) (prohibiting the neglect of an entrusted legal matter) and 1–102(A)(4) (prohibiting conduct involving fraud, deceit, dishonesty, or misrepresentation) in connection with Counts II and III.

## Count IV

{¶ 7} In September 2002, a client paid respondent $750 for help in securing refinancing for some real estate that she owned with a former boyfriend. After one month, the client asked respondent about the status of the case. Respondent told her that the ex-boyfriend had not responded to his first letter and that he would send another letter. The client asked for a copy of the first letter, but respondent did not send a copy to her as he promised to do.

{¶ 8} In December 2002, the client asked again about respondent's progress. Respondent replied that he needed to send a third letter to the ex-boyfriend, and the client asked for copies of the letters that he had supposedly already sent. Respondent told the client that he did not have the letters with him and that if she wanted copies, she would have to return at another time. Thereafter, the client repeatedly attempted without success to contact respondent, and respondent did not comply with her requests for a refund.

{¶ 9} Respondent conceded and the board found that he had violated DR 6–101(A)(3) in connection with Count IV.

## Count V

{¶ 10} A client paid respondent $260 for legal help in an eviction case. Respondent did not complete the representation, nor did he refund his client's

money as requested. Respondent conceded and the board found that he had violated DR 6–101(A)(3).

## Counts VI and VII

{¶ 11} In April 2004, a client paid respondent $500 for help in obtaining a divorce. Respondent completed the paperwork but did not file the papers in court. Respondent then falsely advised his client that a hearing had been scheduled in the case. On the day before the hearing was supposedly to be held, respondent falsely advised the client that the hearing had been rescheduled. The client checked with the domestic relations court himself and discovered that nothing had been filed on his behalf.

{¶ 12} After neglecting this client's case, respondent promised to refund the client's $500. Respondent had not repaid the client as of September 2004, when the client filed a grievance against him.

{¶ 13} Respondent conceded and the board found that he had violated DR 1–102(A)(4) and 6–101(A)(3) in connection with these counts.

## Count VIII

{¶ 14} In April 2004, a client paid respondent a $500 retainer to represent her in a child-support dispute. Respondent neglected the case and did not refund the client's money despite her repeated requests. Respondent conceded and the board found that he had thereby violated 6–101(A)(3).

## Count IX

{¶ 15} In October 1995, a client paid respondent $600 to file a bankruptcy petition on the client's behalf. After respondent filed the petition, the client reported to him that one creditor was continuing to call and send collection letters. Respondent falsely told his client that he had filed a motion for a contempt citation against the creditor. On November 6, 1997, respondent personally paid the client $1,200 and falsely explained that the payment was the result of the contempt proceedings.

{¶ 16} Respondent conceded and the board found that he had violated DR 1–102(A)(4) and 1–102(A)(6) (prohibiting conduct that adversely reflects on a lawyer's fitness to practice law) in connection with Count IX.

## Count X

{¶ 17} On October 8, 2003, Disciplinary Counsel sent a letter of inquiry to respondent by certified mail, asking him to respond to allegations of professional misconduct. A member of respondent's office staff signed the return receipt, but respondent did not reply. On October 30, 2003, Disciplinary Counsel sent a

second letter of inquiry to respondent by certified mail. Again, a staff member signed the return receipt, but respondent did not reply.

{¶ 18} In January 2004, Disciplinary Counsel subpoenaed respondent to appear for his deposition on February 24, 2004. Respondent was duly served with the subpoena but did not appear.

{¶ 19} Respondent conceded and the board found that he had violated Gov.Bar R. V(4)(G) (requiring a lawyer to cooperate in a disciplinary proceeding) in connection with Count X.

### Count XI

{¶ 20} Respondent conceded and the board found that he did not register as an attorney or pay his registration fee on or before September 1, 2003. Respondent conceded and the board found that he had violated Gov.Bar R. VI(1)(A).

### Recommended Sanction

{¶ 21} In recommending a sanction for this misconduct, the panel and board weighed the aggravating and mitigating factors listed in Section 10 of the Rules and Regulations Governing Procedure on Complaint and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg."). The parties also stipulated to the following considerations.

{¶ 22} As mitigating, the panel and board found that respondent had no prior disciplinary record and that after he retained counsel, he cooperated with disciplinary authorities completely. BCGD Proc.Reg. 10(B)(2)(a) and (d). Since the disciplinary proceedings commenced, respondent has refunded fees to the client in Counts VI and VII, BCGD Proc.Reg. 10(B)(2)(c), whom he continued to represent without charge until the client's divorce was granted.

{¶ 23} The panel and board also considered that on February 17, 2005, respondent entered into a three-year mental health contract with the Ohio Lawyers Assistance Program ("OLAP"). OLAP representatives assessed respondent as suffering from dysthymia, a low-level depression that lasts two or more years, and concluded that he had suffered from this condition since at least 1999. The board inferred that depression contributed to at least some of respondent's misconduct, another mitigating factor under BCGD Proc.Reg. 10(B)(2)(g).

{¶ 24} After his assessment, respondent sought treatment from Liz Elliott, a licensed marriage and family counselor, and she testified on his behalf. Elliott related that she had met with respondent seven times, and she agreed that he was suffering from depression, which made it very difficult for him to function at a professional level. As of the hearing in April 2005, respondent was continuing in therapy with Elliott and was attending sessions several times each month.

Elliott considered respondent to be a conscientious and honest person, and she believed that any dishonesty he had exhibited was consistent with an inability to cope with the pressures of his work due to his depression. Respondent was also taking antidepressant medication as prescribed by his doctor.

{¶ 25} The parties proposed that respondent receive an indefinite suspension from the practice of law, and the board, adopting the panel's report, accepted that recommendation. The board cited *Disciplinary Counsel v. Golden*, 97 Ohio St.3d 230, 2002-Ohio-5934, 778 N.E.2d 564, in which we indefinitely suspended the license of a lawyer who had repeatedly neglected her clients' cases, made false statements, and failed to cooperate with disciplinary authorities, but who suffered from depression that contributed to her wrongdoing. Similarly, in *Dayton Bar Assn. v. Shaman* (1997), 80 Ohio St.3d 196, 685 N.E.2d 518, another lawyer suffering from depression was indefinitely suspended because he had neglected nine clients, failed to cooperate, and made false statements. Finally, the board cited *Akron Bar Assn. v. Snyder* (1997), 78 Ohio St.3d 57, 676 N.E.2d 504, in which we indefinitely suspended a lawyer who, while suffering from depression, had neglected multiple clients, acted dishonestly with one client, and failed to cooperate initially, but who showed remorse and had made restitution.

{¶ 26} Consistent with the parties' suggestion, the board further recommended conditions for respondent's reinstatement. First, the board recommended that respondent complete his OLAP contract and continue in treatment as prescribed by his therapist and physician. Second, the board recommended that respondent make full restitution to his clients in the stipulated fee amounts. Third, the board recommended that respondent obtain and maintain malpractice insurance in accordance with the amount deemed sufficient in DR 1–104, which specifies coverage of "at least one hundred thousand dollars per occurrence and three hundred thousand dollars in the aggregate." DR 1–104(A).

## Review

{¶ 27} We agree that respondent violated DR 1–104, 1–102(A)(4), 1–102(A)(6), and 6–101(A)(3), and Gov.Bar R. V(4)(G) and VI(1)(A), as found by the board. We also agree that an indefinite suspension, with conditions, is appropriate.

{¶ 28} Accordingly, respondent is hereby indefinitely suspended from the practice of law in Ohio. In any petition for reinstatement that he files, respondent shall, in addition to the requirements of Gov.Bar R. V(10), show that (1) he has complied with and completed his OLAP contract and has continued in treatment as prescribed by his therapist and physician, (2) he has made full restitution, including interest at the judgment rate from the date of our order, to his clients in the stipulated fee amounts, and (3) he has obtained and maintains malpractice insurance "of at least one hundred thousand dollars per occurrence

and three hundred thousand dollars in the aggregate." DR 1–104(A). Costs are taxed to respondent.

Judgment accordingly.

MOYER, C.J., RESNICK, PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL and LANZINGER, JJ., concur.

———————

Hollencamp & Hollencamp and Arthur R. Hollencamp, for relator Dayton Bar Association.

Jonathan E. Coughlan, Disciplinary Counsel, and Robert R. Berger, Assistant Disciplinary Counsel, for relator Disciplinary Counsel.

Dennis A. Lieberman, for respondent.