**[This opinion has been published in *Ohio Official Reports* at 84 Ohio St.3d 90.]**

CINCINNATI BAR ASSOCIATION *v.* KOMAREK.

**[Cited as *Cincinnati Bar Assn. v. Komarek*, 1998-Ohio-312.]**

*Attorneys at law—Misconduct—Indefinite suspension with credit for time served under suspension for mental disability—Misappropriation of client funds— Neglect of entrusted legal matters—Failing to seek lawful objectives of client—Failing to carry out contract of employment—Prejudicing or damaging a client during course of professional relationship—Failing to cooperate in disciplinary investigation—Engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation—Knowingly making a false statement of law or fact—Engaging in illegal conduct involving moral turpitude—Failing to preserve funds of a client—Violating a Disciplinary Rule—Engaging in conduct adversely reflecting on fitness to practice law— Failing to refund fee paid in advance that has not been earned.*

(No. 98-398—Submitted July 8, 1998—Decided November 25, 1998.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 95-57.

_____

{¶ 1} In May 1995, relator, Cincinnati Bar Association, filed a six-count complaint charging respondent, Paul Komarek of Cincinnati, Ohio, Attorney Registration No. 0036795, with disciplinary violations dating back to 1992. On September 14, 1995, we suspended respondent for failure to respond to a subpoena and cooperate with relator in that investigation. *Cincinnati Bar Assn. v. Komarek* (1995), 73 Ohio St.3d 1443, 654 N.E.2d 980.

{¶ 2} Earlier, in August 1995, respondent filed an answer to relator's complaint stating, *inter alia,* that at all of the times mentioned in the complaint he was mentally ill. In November 1995, the Board of Commissioners on Grievances

and Discipline of the Supreme Court ("board") ordered that respondent be examined by Dr. Robert McDevitt about respondent's claim of mental illness. In January 1996, relator filed an amended complaint charging respondent with other disciplinary violations in five additional counts. Respondent in his answer to the amended complaint again stated that at all times mentioned in the amended complaint he was mentally ill.

{¶ 3} After respondent put his mental illness in issue, the board received the report of McDevitt indicating that respondent suffered from bipolar II disorder that severely impaired respondent's "judgment and ability to deal constructively with his law practice, and indeed the needs of his clients."

{¶ 4} On March 21, 1996, relator reported to the Clerk of the Supreme Court that respondent had complied with the subpoena and had met the conditions for reinstatement specified in the order of September 14, 1995. However, before we acted on this information, we suspended respondent from the practice of law for mental illness pursuant to Gov.Bar R. V(7) on June 7, 1996.

{¶ 5} On December 4, 1996, respondent applied for reinstatement pursuant to Gov.Bar R. V(7)(F), attaching a letter from examining physicians indicating that there is no reason that respondent "should be excluded from practicing law at the present time." On March 28, 1997, a panel of the board ordered that respondent be reexamined by McDevitt. McDevitt reported in an April 1997 letter that respondent is "in remission from his mental illness and he should be able to resume his professional duties."

{¶ 6} Based upon McDevitt's report, respondent moved for summary judgment, arguing that the cause for his suspension for mental illness having been removed and that reinstatement to the practice of law was appropriate. The motion was overruled, and the matters were set for hearing.

{¶ 7} In a consolidated hearing on July 28, 1997, a panel of the board heard respondent's application for reinstatement as well as relator's amended complaint

and respondent's answers. The panel found that respondent's mental illness was in a state of remission and recommended that his June 7, 1996 suspension pursuant to Gov.Bar R. V(7)(D) be terminated. The panel said that its recommendation should not affect any past additional suspensions that may have been ordered by the court.

{¶ 8} At the conclusion of the hearing, respondent made a motion to dismiss, arguing that any adverse decision on these charges, after he had already been suspended for mental illness, would amount to double jeopardy and would violate the Americans with Disabilities Act. The panel, nevertheless, proceeded to consider relator's amended complaint, which charged in eleven counts that respondent had committed at least forty violations of the Disciplinary Rules, and in five instances failed to comply with the Rules for the Government of the Bar.

{¶ 9} The panel found with respect to Count One that while representing a guardian in the estate of Jewell Oliver in the Hamilton County Probate Court, respondent obtained sixteen continuances and failed to appear on two occasions, requiring the court to issue one body attachment for his failure to appear. In administering the estate of Ella L. Carter, respondent failed to file a timely final account and obtained nine continuances to do so after the court issued a notice to appear. On four occasions in Carter's case respondent failed to appear, requiring the judge to issue body attachments. In September 1994, the court ordered respondent to prepare entries in both cases. Respondent failed to file the appropriate documents, and the court appointed a commissioner to complete the guardianships. Respondent failed to respond to letters and telephone calls of relator's investigator with respect to these matters and, when he did appear in response to a subpoena, respondent failed to bring his medical records as ordered. The panel concluded that respondent's conduct violated DR 6-101(A)(3) (neglecting an entrusted legal matter), 7-101(A)(1) (failing to seek the lawful objectives of a client), (2) (failing to carry out a contract of employment), (3)

(prejudicing or damaging a client during the course of the professional relationship), and Gov.Bar R. V(4)(G) (failing to cooperate in an investigation).

**{¶ 10}** In considering Count Two, the panel found that in June 1992, respondent represented Michael and Mary Younger in a lawsuit for $5,000 against Cynthia Lugenbeal. Lugenbeal answered, counterclaimed for approximately $65,000, and moved to dismiss the Younger lawsuit. In June 1993, the court granted the motion to dismiss, and in July 1993 entered a default judgment in favor of Lugenbeal. Respondent did not inform the Youngers of the dismissal or the default judgment. Ultimately, the Youngers filed bankruptcy. The panel concluded that in representing the Youngers, respondent had violated DR 6-101(A)(3), 7-101(A)(1), (2), and (3), and Gov.Bar R. V(4)(G).

**{¶ 11}** Count Three involved respondent's representation of Melvin Hill in three separate matters, as well as Hill's malpractice suit against respondent and respondent's failure to cooperate with relator's investigation. In October 1992, Hill retained respondent to bring a lawsuit against Hill's former partner. Although the amount in controversy exceeded the $50,000 limit for matters which could be submitted for arbitration in Hamilton County, respondent agreed that the suit should be arbitrated. After the arbitrators ruled for the defendant, respondent assured Hill that he would appeal to the court of common pleas. Respondent failed to perfect the appeal, and in August 1994 the defendant obtained a judgment against Hill. The panel concluded that respondent had violated DR 1-102(A)(4) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), 6-101(A)(3), 7-101(A)(1), (2), (3), and 7-102(A)(5) (knowingly making a false statement of law or fact).

**{¶ 12}** The panel also found that after respondent filed a Chapter 13 bankruptcy case for Hill in February 1994, the case was dismissed because respondent failed to timely file a reorganization plan. The dismissal vacated the stay provisions of the Bankruptcy Code and permitted Hill's home mortgage lender

to recommence a foreclosure action on Hill's house. Respondent's July 1994 motion for reconsideration of the Chapter 13 dismissal was opposed by the home mortgage lender on the ground that Hill had filed a Chapter 7 bankruptcy in 1988 and was therefore precluded from filing another bankruptcy petition. Without consulting Hill, who would have informed respondent that he was not the "Melvin Hill" who had previously filed bankruptcy, respondent filed a reply memorandum conceding Hill's previous Chapter 7 filing. The motion for reconsideration was denied, the mortgagee completed its foreclosure, and Hill was evicted from his home. The panel concluded that respondent's conduct had violated DR 6-101(A)(3) and 7-101(A)(1), (2), and (3).

{¶ 13} In addition, the panel found that in 1990, respondent filed an employment discrimination suit on behalf of Hill against Proctor & Gamble. Respondent failed to reply to the defendant's motion, and the suit was dismissed. Respondent did not notify Hill of the dismissal, but instead told him that the case was still pending. Hill was finally notified of the dismissal in February 1995 by the relator. The panel concluded that respondent's conduct had violated DR 1-102(A)(4), 6-101(A)(3), 7-101(A)(1), (2), and (3), and 7-102(A)(5).

{¶ 14} When Hill sued respondent for malpractice, respondent did not answer, and the common pleas court referee awarded Hill a judgment for $155,000. Respondent objected to the referee's report on the ground that he could not respond because of personal illness. However, Hill's counsel opposed the objection because respondent had been appearing in other cases in the same court. The common pleas court ultimately adopted the findings of the referee. The panel concluded that respondent had violated DR 1-102(A)(4) and 7-102(A)(5).

{¶ 15} The panel also found that respondent did not respond to relator's request that he answer the Hill grievances, and concluded that respondent had violated Gov.Bar R. V(4)(G).

{¶ 16} In considering Count Four, the panel found that in July 1994 respondent filed a discrimination suit against the United States Army on behalf of Laverne Love. The check for the filing fee, which was drawn on respondent's account, was returned for insufficient funds. Despite having been notified of the necessity to pay the filing fee and having received a court show-cause order, respondent did not pay the fee. The court dismissed the case in September 1994. The panel concluded that respondent's conduct had violated DR 6-101(A)(3), and 7-101(A)(1), (2), and (3).

{¶ 17} The panel dismissed Count Five, and it found with respect to Count Six that respondent had registered late for four out of six biennial registration periods.

{¶ 18} On Count Seven the panel found that respondent, while representing Thomas Joseph in a real estate transaction, agreed to receive rental payments into his trust account and from those funds make mortgage payments on the subject property. Although respondent received the rents, he failed to make mortgage payments for November and December 1994 and January 1995. The mortgagee informed Joseph of nonpayment, and Joseph attempted to contact respondent, but respondent did not reply. After another attorney employed by Joseph contacted respondent, respondent agreed to make the delinquent mortgage payments. However, his check was returned for insufficient funds. Respondent failed to answer certified letters and a subpoena from relator's representative who investigated this matter. The panel found that respondent had violated DR 1-102(A)(1) (violating a Disciplinary Rule), (3) (engaging in illegal conduct involving moral turpitude), 6-101(A)(3), 9-102 (failure to preserve the funds of a client), and Gov.Bar R. V(4)(G).

{¶ 19} The panel found with respect to Count Eight that respondent represented defendants Jyoti and Surendra Hedge, who under the terms of a settlement were to pay $2,333.70 to respondent who was to forward the money to

the plaintiff. Respondent received the settlement sum from the Hedges, but his check to the plaintiff's attorney was returned several times for insufficient funds. Respondent neither replied to the certified mail letter of relator's investigator nor appeared at a deposition after being served with a subpoena. The panel concluded that respondent had violated DR 1-102(A)(1), (3), and (4), 6-101(A)(3), and 9-102 and Gov.Bar R. V(4)(G).

{¶ 20} The panel found, as alleged in Count Nine, that in October 1993, respondent filed an application for asylum on behalf of Ranjith Wimalaratna, a native of Sri Lanka who claims that his family paid respondent a retainer of $1,000. The application was defective because the name of respondent's client was misspelled and respondent failed to use the client's deportation file number. At Wimalaratna's deportation hearing, the court ordered respondent to file an amended application for asylum by November 18, 1993. Respondent did not file the papers, and the court ordered Wimalaratna's voluntary departure in lieu of deportation. Respondent did not notify his client of the court's order, but told him that the matter was continued. Respondent's motion for a stay of execution of the order was returned for failure to follow court procedures. Eventually Wimalaratna employed another attorney. Respondent failed to respond to relator's inquiries about the matter and failed to return any portion of the retainer to Wimalaratna. The panel concluded that respondent had violated DR 1-102(A)(4) and (6) (engaging in conduct that adversely reflects on fitness to practice law), 2-110(A)(3) (failure to refund a fee paid in advance that has not been earned), 7-101(A)(1), (2), and (3), 7-102(A)(5), and Gov.Bar R. V(4)(G).

{¶ 21} With respect to Count Ten the panel found that respondent, having been retained by William P. Taylor in May 1995 to represent him in a divorce proceeding, failed to take any action on Taylor's behalf or to return the $400 retainer paid to him by Taylor, even though Taylor made oral and written requests for the money and this court's suspension order of September 1995 required

respondent to return to clients all unearned funds. The panel concluded that respondent had violated DR 1-102(A)(4), 2-110(A)(3), 6-101(A)(3), 7-101(A)(1), (2), and (3), 9-102(B)(4) (failure to promptly pay to the client funds to which the client is entitled), and Gov.Bar R. V(4)(G). The panel dismissed Count Eleven.

{¶ 22} The panel recommended that respondent be indefinitely suspended from the practice of law with no credit for the time that he had served under the mental illness suspension. The board adopted the findings, conclusions, and recommendations of the panel with respect to both the mental illness suspension and the disciplinary violations.

_____

*Robert F. Laufman, Stephen M. Nechemias* and *Edwin W. Patterson III*, for relator.

*Paul A. Komarek, pro se.*

_____

*Per Curiam.*

{¶ 23} At the outset we note that respondent was suspended from the practice of law on September 14, 1995, for failure to comply with a subpoena and for failure to cooperate in an investigation. That suspension has not been lifted, although relator reported to the Clerk of the Supreme Court that respondent had complied with the subpoena and had met the conditions for reinstatement specified in the order of suspension.

{¶ 24} Respondent was also suspended on June 7, 1996, as a result of the answer he filed in this disciplinary case in August 1995 putting his mental illness in issue. It is respondent's disciplinary violations and his suspension for mental illness that are before us now.

{¶ 25} We adopt the findings, conclusions, and recommendation of the board that respondent's suspension for mental illness under Gov.Bar R. V(7)(D) should be terminated, and it is so ordered.

**{¶ 26}** In response to our order to show cause why this court should not adopt the board's resolution of his alleged disciplinary violations, respondent filed a motion to supplement the record, a motion to remand the matter to the board to consider the supplemented record, and a motion for sanctions against relator for failure to respond to requests for admissions. Respondent also objected to the board's denial of his motion to dismiss the disciplinary action, claiming that the sanction he received for mental illness was a final disposition of his case and *res judicata* as to the disciplinary matters. Respondent also claims that to deny him the right to practice on account of his mental illness violates the Americans with Disabilities Act, Section 12101 *et seq*., Title 42, U.S.Code ("ADA").

**{¶ 27}** Having reviewed the record, we grant respondent's motion to supplement. We deny respondent's motion for remand to the board to consider the record, as supplemented, since this court is as able as the board to consider the supplemented record. Further, we find that "there was good reason for the failure to admit" under Civ.R. 37(C), and respondent's motion for sanctions based on relator's alleged failure to respond adequately is denied.

**{¶ 28}** Further, we reject respondent's objection, based upon *res judicata*, to the board's denial of his motion to dismiss. The purpose of Gov.Bar R. V(7) is to provide expedited protection to the public from a lawyer who admits he can no longer render legal services properly. The indefinite summary suspension authorized by that rule when mental illness is placed in issue by the respondent's answer does not determine the underlying issues of the disciplinary complaint. The issue in the collateral proceeding, raised by the answer claiming mental illness, is whether and when the lawyer who claimed mental disability may resume the practice, not the nature and extent of the disciplinary violations. A resolution of the mental illness issue is not *res judicata* as to the disciplinary issues. As we said in *Cincinnati Bar Assn. v. Fettner* (1983), 8 Ohio St.3d 17, 18, 8 OBR 85, 86, 455 N.E.2d 1288, 1288-1289, "while the board may properly consider respondent's

mental illness at the time of the alleged misconduct as a mitigating factor in determining what sanction should be imposed, the mental illness provisions * * * are not intended to be used by respondent in a disciplinary action to avoid suspension on that basis."

{¶ 29} Respondent's claim that the ADA precludes our disciplinary action also fails. The ADA does not prevent disciplinary authorities from disbarring an attorney with a bipolar disorder who had misappropriated client funds. See *Florida Bar v. Clement* (Fla.1995), 662 So.2d 690, 699-700, certiorari denied (1996), 517 U.S. ____, 116 S.Ct. 1829, 134 L.Ed.2d 933. See, also, *State ex rel. Oklahoma Bar Assn. v. Busch* (Okla.1996), 919 P.2d 1114, 1119-1120, in which the court imposed a two-year suspension on an attorney with attention deficit disorder.

{¶ 30} As to the disciplinary violations, we adopt the findings and conclusions of the board. Because of respondent's actions and failures to act, lawsuits brought by his clients were dismissed, default judgments were taken against them, their homes were foreclosed upon, they were lied to about the status of their cases, and their money was taken by respondent and not returned.

{¶ 31} Further, the record is clear that respondent did no work for the $400 in attorney fees he received from Taylor, and that he received $2,333.70 from the Hedges and an unknown amount of rents from Joseph's tenants, all of which amounts he failed to transmit or account for. In addition, Hill obtained a $155,000 malpractice judgment against respondent, which apparently remains unpaid. The other damages caused by respondent's conduct cannot be quantified.

{¶ 32} The usual sanction for misappropriation of client funds and neglect of client matters is disbarment. *Columbus Bar Assn. v. Sterner* (1996), 77 Ohio St.3d 164, 167, 672 N.E.2d 633, 635. However, as we noted in *Warren Cty. Bar Assn. v. Bunce* (1998), 81 Ohio St.3d 112, 115, 689 N.E.2d 566, 568, when imposing a sanction, we consider not only the duty violated, but also the lawyer's mental state, the injury caused, and whether mitigating factors exist. Considering

the mental state of respondent at the time of these infractions and respondent's recovery from his psychological disorder, we find that an indefinite suspension from the practice of law is appropriate in this case with credit for time served under suspension for mental disability. As a condition for applying for reinstatement, respondent shall produce affidavits (1) from the commissioner of the estates of Oliver and Carter that all fees respondent received while representing the guardians of those estates have been repaid to the estates, (2) from the Youngers, Love, Wimalaratna, and Taylor that he had repaid the fees he received from them or their families, (3) from Hill that the $155,000 malpractice judgment has been paid, (4) from Joseph that the rentals which respondent received and did not use for mortgage payments have been refunded, and (5) from the Hedges that the $2,333.70 which he failed to forward has been refunded to them. And it is so ordered. Costs are taxed to respondent.

*Judgment accordingly.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

_____