CUYAHOGA COUNTY BAR ASSOCIATION *v.* MCCLAIN.

[Cite as *Cuyahoga Cty. Bar Assn. v. McClain,*
99 Ohio St.3d 248, 2003-Ohio-3394.]

(No. 2002–2224—Submitted February 25, 2003—Decided July 16, 2003.)

**Per Curiam.**

{¶ 1} Respondent, Mark A. McClain of Cleveland, Ohio, Attorney Registration No. 0013148, was admitted to the practice of law in Ohio in 1982. On June 5, 2002, we suspended his license indefinitely for professional misconduct. *Cleveland Bar Assn. v. McClain,* 95 Ohio St.3d 488, 2002-Ohio-2428, 769 N.E.2d 390 (*"McClain I"*). On September 23, 2002, relator, Cuyahoga County Bar Association, filed an amended complaint, charging respondent with additional violations of the Code of Professional Responsibility. A panel of the Board of Commissioners on Grievances and Discipline heard the cause, making findings of fact, conclusions of law, and a recommendation.

{¶ 2} The panel found that a client contacted respondent's office in April 1998 to make an appointment with him to discuss her personal-injury and medical-malpractice claims. The client had initially met with another attorney with whom respondent was sharing office space, and respondent discovered the client's file in June or July 1998, after the other attorney had moved out. In December 1998, respondent filed a personal-injury action and a separate malpractice action on the

client's behalf in the Cuyahoga County Court of Common Pleas. He did not, however, answer the client's repeated inquiries about the status of her cases.

{¶ 3} In July 1999, respondent failed to appear at a case-management conference in the personal-injury action. He also failed to attend a hearing on August 17, 1999, at which the court considered dismissing the personal-injury action for failure to prosecute. The court subsequently dismissed the client's lawsuit.

{¶ 4} Also in July 1999, the court dismissed the client's malpractice action for respondent's failure to comply with discovery and failure to prosecute. Respondent did not timely advise his client of these dismissals and did not perfect an appeal in either case. The statute of limitations for both causes of action expired before the client was able to refile them.

{¶ 5} The panel also found that another client retained respondent in May 2000 to represent her in a pending race- and sex-discrimination suit. Respondent failed to oppose a motion for summary judgment, which led to the court's dismissal of his client's case. Respondent moved for relief from the court's judgment, arguing excusable neglect due to his severe depression, but he did not substantiate his medical condition. The court denied the motion for relief from judgment as well as respondent's motion for leave to respond to the motion for summary judgment. Respondent did not appeal the court's dismissal order before the appeal period expired.

{¶ 6} The panel found that by abandoning the interests of these clients, respondent committed three violations of DR 6–101(A)(3) (neglect of an entrusted legal matter). Because respondent also did not reply to some initial attempts to investigate this misconduct, the panel also found respondent in violation of Gov.Bar R. V(4)(G) (failure to cooperate in an investigation of misconduct).

{¶ 7} In recommending a sanction, the panel considered as aggravating factors that respondent had a significant history of professional misconduct, including previous client neglect and lack of cooperation, had lost causes of action that his clients were entitled to pursue, and had not refunded $1,000 paid by the client with the discrimination claims. In mitigation, the panel observed that respondent had eventually cooperated with relator, had a good reputation as a lawyer, was active in his profession and community, and had been attempting to repay money owed due to his earlier misconduct. In addition, respondent established that he was suffering from debilitating mental illness during the events at issue and that he continued to be treated for this illness. The panel found that respondent's mental illness contributed to this misconduct, as well as some of the misconduct he committed in the earlier case. The panel also acknowledged respondent's efforts to recuperate through psychotherapy and medication; however, it concluded that, for now, he was incapable of practicing law.

{¶ 8} The panel recommended that respondent receive an indefinite suspension from the practice of law, with the suspension to be served concurrently with the indefinite suspension that respondent is currently serving. The board adopted the panel's findings of misconduct and recommendation, although it clarified that this indefinite suspension should be deemed to have commenced as of June 5, 2002, to coincide with the suspension already in effect.

{¶ 9} In objections to the board's findings and recommendation, respondent challenges the aggravating effect attributed to his history of misconduct. He contends that because he mentioned his depression diagnosis during preliminary proceedings in *McClain I* and then developed a more complete record of his condition in this case, he should have been afforded a mental-illness suspension under Gov.Bar R. V(7) in the earlier case and not subjected to formal disciplinary measures. Citing a recent medical report indicating his favorable response to therapy, respondent urges us to consolidate this case with *McClain I* and to issue an order that imposes a one-year suspension, provides credit for time served, and allows him to apply for reinstatement to the bar under conditions of continued monitoring and medical treatment.

{¶ 10} We overrule this objection. The expedited procedure for suspending a mentally ill attorney's license exists for the protection of the public, not as a means for an attorney to avoid disciplinary action. *Cincinnati Bar Assn. v. Komarek* (1998), 84 Ohio St.3d 90, 96, 702 N.E.2d 62. Thus, even if an indefinite summary suspension under Gov.Bar R. V(7) had been issued, it would not have resolved any charged disciplinary violations. Id.

{¶ 11} Respondent also insists that his clients were not "vulnerable" enough for the harm respondent caused them to be considered as an aggravating factor in enhancing his sanction. See Section 10(B)(1)(h) of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline. Basically, respondent contends that his clients' chances of success were poor so that the loss of their claims for relief was not too great. He also asserts that he earned the $1,000 paid by the client with the discrimination claims. We defer to the board's findings of fact on these issues. *Cleveland Bar Assn. v. Dixon*, 95 Ohio St.3d 490, 2002-Ohio-2490, 769 N.E.2d 816, ¶ 19.

{¶ 12} Beyond this, we agree that respondent committed the cited misconduct, and, with the sanction recommended by the board. To determine the appropriate sanction, we consider " 'the duties violated, the actual injury caused, the lawyer's mental state, the existence of aggravating or mitigating circumstances, and sanctions imposed in similar cases.' " *Disciplinary Counsel v. Connors*, 97 Ohio St.3d 479, 2002-Ohio-6722, 780 N.E.2d 567, ¶ 16, quoting *Stark Cty. Bar Assn. v. Buttacavoli*, 96 Ohio St.3d 424, 2002-Ohio-4743, 775 N.E.2d 818, ¶ 16. An

indefinite suspension may be an appropriate sanction for repeated neglect caused, at least in part, by mental or emotional illness. *Disciplinary Counsel v. Golden,* 97 Ohio St.3d 230, 2002-Ohio-5934, 778 N.E.2d 564, ¶ 23–25.

{¶ 13} Accordingly, respondent is hereby suspended indefinitely from the practice of law in Ohio, and, consistent with the board's recommendation, the suspension is deemed to have commenced as of June 5, 2002. In addition, we order respondent to reimburse the client who paid him $1,000 to pursue her claims for race- and sex-discrimination. Costs are taxed to respondent.

Judgment accordingly.

MOYER, C.J., RESNICK, F.E. SWEENEY, WISE and O'CONNOR, JJ., concur.

PFEIFER and LUNDBERG STRATTON, JJ., dissent.

JOHN W. WISE, J., of the Fifth Appellate District, sitting for COOK, J.

---

**LUNDBERG STRATTON, J., dissenting.**

{¶ 14} Because I believe that the respondent's actions and inactions in both cases relate to the same course of conduct caused by his mental illness, I would remand both cases to the panel to consider all mitigating evidence of mental illness in both cases.

{¶ 15} Respondent was before this court previously in *Cleveland Bar Assn. v. McClain,* 95 Ohio St.3d 488, 2002-Ohio-2428, 769 N.E.2d 390 (*"McClain I"*) for violating DR 6–101(A)(3) (a lawyer shall not neglect an entrusted legal matter), DR 7–101(A)(1) (a lawyer shall not intentionally fail to seek the lawful objectives of a client), DR 7–101(A)(2) (a lawyer shall not fail to carry out a contract of professional employment), DR 7–101(A)(3) (a lawyer shall not prejudice or damage a client), DR 9–102(B)(4) (a lawyer shall promptly deliver to the client funds or property to which the client is entitled), and Gov.Bar R. V(4)(G) (no attorney shall neglect or refuse to assist or testify in a disciplinary investigation or hearing). At that time, respondent was indefinitely suspended from the practice of law and ordered to pay restitution. The infractions in *Cleveland Bar Assn. v. McClain I* took place in 1993, 1994, and 1999.

{¶ 16} Sometime in 1997, respondent testified, he began to feel that his memory was slipping, so he consulted his physician. His physician dismissed the concerns, telling him that everyone forgets things from time to time. Respondent continued practicing law. In late 1999, respondent was a prosecutor for the city of East Cleveland and was on his way to court when he broke down in tears and pulled his car off to the side of the road. Respondent called the Cleveland Bar Association because he was under the impression that it had a program for assistance. The bar association informed respondent that it had no such program

but directed him to Dr. Donald Weinstein, a psychologist. Before even pulling back onto the road, respondent called Dr. Weinstein and made an appointment.

{¶ 17} Dr. Weinstein began treating respondent on January 11, 2000, and diagnosed respondent with major depression. After several sessions, Dr. Weinstein believed that respondent's depression was in part a side effect of medication respondent was taking for high blood pressure, so Dr. Weinstein sent respondent to his physician. Respondent's physician lowered the dose of his blood pressure medication, and Dr. Weinstein told respondent that he would probably feel better in a couple of months. Respondent continued his practice.

{¶ 18} After respondent realized that he was not feeling better, he spoke with a judge, who recommended that he call the Ohio Lawyers Assistance Program ("OLAP"). Respondent contacted OLAP and was ultimately referred to the Cleveland Clinic Psychiatry Department, where he was treated by Dr. Jeffery Hutzler.

{¶ 19} In a November 2002 letter, Dr. Hutzler stated that based on his examination of respondent and review of respondent's medical history, it was his opinion with a reasonable degree of medical certainty that respondent suffered from a mental illness. He also believed that respondent's existing mental illness substantially impaired his ability to practice law, even though he had shown dramatic improvement. Dr. Hutzler also stated that respondent "has a substantial disorder [of] mood and with that memory that grossly impairs judgment, behavior and capacity to recognize certain kinds of reality and his ability to meet ordinary demands of life, particularly his professional life." Finally, Dr. Hutzler concluded that respondent "certainly has been substantially and severely impaired by his mental illness since 1998 or 1997."

{¶ 20} In 2002, the Board of Commissioners on Grievances and Discipline considered the charges that are the subject of the present case and concluded that respondent's actions constituted three violations of DR 6–101(A)(3) (a lawyer shall not neglect a legal matter entrusted to him) and one violation of Gov.Bar R. V(4)(G) (no attorney shall neglect or refuse to assist or testify in a board investigation or hearing). The board recommended an indefinite suspension upon conditions, imposed retroactively to be served concurrently with the indefinite suspension imposed June 5, 2002.

{¶ 21} Respondent contends that his actions in neglecting client matters in *McClain I* and in this case were caused by his mental illness, major depressive disorder. Respondent submits that this causal connection has been established through the reports and opinions of Dr. Bea, Dr. Hutzler, and Dr. Weinstein. I agree.

{¶ 22} Dr. Hutzler concluded that respondent has been substantially and severely impaired by his mental illness since 1997 or 1998. The allegations of neglect in the present case concerned conduct in 1998 through 2001.

{¶ 23} Gov.Bar R. V(7) sets forth the procedure for a mental-illness suspension and incorporates the definition of mental illness set forth in R.C. 5122.01(A), which provides: " 'Mental illness' means a substantial disorder of thought, mood, perception, orientation, or memory that grossly impairs judgment, behavior, capacity to recognize reality, or ability to meet the ordinary demands of life."

{¶ 24} Gov.Bar R. V(7)(C) provided: "If the complaint or answer alleges existing mental illness unsupported by a journal entry of a court of competent jurisdiction *or mental illness otherwise is placed in issue,* the Board or hearing panel, on its own motion or on motion by either party, may order a medical or psychiatric examination of respondent by one or more physicians designated by the Board or hearing panel." (Emphasis added.) 64 Ohio Official Reports XCIX.

{¶ 25} Because respondent has a diagnosed mental illness that dates back to 1997 or 1998, he was eligible for a mental illness suspension under Gov.Bar R. V(7) when he responded to the Cleveland Bar Association's Notice of Intent and Draft Complaint in 2000, notifying the bar association that he was suffering from depression. The Cleveland Bar Association failed to proceed in accordance with Gov.Bar R. V(7)(C), which allows for mental illness suspensions. In light of this failure, I believe that to use respondent's prior disciplinary case as an aggravating factor in determining a sanction in this case is unwarranted and flies in the face of the enlightened approach to mental illness intended by Gov.Bar R. V(7).

{¶ 26} This is not a case where respondent refused to acknowledge that he had a mental illness or refused to seek treatment for that mental illness. Respondent reached out to the bar association and attempted to find help. Sadly, our court had not yet established the mental health treatment component of the Ohio Lawyers Assistance Program, nor had we yet amended Gov.Bar R.V(7), effective February 1, 2003, to allow mental illness to be raised at any stage of the proceedings. In other words, our profession and our disciplinary system did not yet have the tools in place to deal with respondent's mental illness. We should not punish respondent for our slow progress in this area.

{¶ 27} Respondent's neglect of client matters in the current case occurred during his severe depression. Respondent's actions and inactions in this case and some of his actions and inactions in the former case were caused by his major depressive disorder. This causal connection was established through the reports and opinions of Dr. Bea, Dr. Hutzler, and Dr. Weinstein.

{¶ 28} I agree with the majority that the expedited procedure for suspending the license of an attorney with mental illness exists for the protection of the public, not as a means for an attorney to avoid disciplinary action. However, in

this case, I believe that respondent's mental illness was a major mitigating factor, particularly when his misconduct resulted from neglect, which is one of the major symptoms of a depressive disorder—the inability to act. As respondent's psychiatrist, Dr. Weinstein, wrote, "The paradox about Depression is that it becomes incapacitating and overwhelming for the individual suffering. The simple function of returning phone calls; writing documents that were at one time familiar and simple become overwhelming and frustrating; the carrying out of daily routine functions that were [once] simple become action fraught with potential failure. Depression is self fulfilling as a disease."

{¶ 29} I believe that respondent's behavior in both cases relates to his mental illness, and I would remand the cause to the panel to consider all mitigating evidence of mental illness in *both* cases and to recommend a sanction based appropriately on that evidence. Accordingly, I respectfully dissent.

PFEIFER, J., concurs in the foregoing dissenting opinion.

———————

Robert J. Vecchio, Tina Wecksler and Ellen S. Mandell, for relator.

Mary L. Cibella, for respondent.