CUYAHOGA COUNTY BAR ASSOCIATION *v.* SCOTT-CHESTANG.

[Cite as *Cuyahoga Cty. Bar Assn. v. Scott–Chestang,*
109 Ohio St.3d 405, 2006-Ohio-2711.]

(No. 2006–0121—Submitted March 15, 2006—Decided June 14, 2006.)

**Per Curiam.**

{¶ 1} Respondent, Renee B. Scott–Chestang, now known as Renee B. Scott–Chestang Fossett, of Shaker Heights, Ohio, Attorney Registration No. 0030616, was admitted to the Ohio bar in 1985.

{¶ 2} On May 20, 2005, relator, Cuyahoga County Bar Association, filed an amended complaint charging respondent with professional misconduct. Respondent filed an answer to the complaint, and a panel of the Board of Commissioners on Grievances and Discipline held a hearing on the complaint in August 2005. The panel then prepared written findings of fact, conclusions of law, and a recommendation, all of which the board adopted.

Misconduct

*Count I*

{¶ 3} In March 2003, John Chapman hired respondent to represent him in a bankruptcy matter. Chapman paid $665 to respondent for her services and $185 for a bankruptcy filing fee. Respondent gathered Chapman's credit reports, prepared some paperwork on his behalf, and spoke with him in her office and by telephone. She failed, however, to file Chapman's bankruptcy petition with the bankruptcy court as she had promised, and she never returned any of the fees that he had paid her.

{¶ 4} The board found that respondent had thereby violated DR 6–101(A)(3) (prohibiting a lawyer from neglecting an entrusted legal matter).

*Count II*

{¶ 5} In March 2003, Gracie Wilkins hired respondent to represent her in a domestic-relations matter. Wilkins paid a total of $710 to respondent for legal

services and a court filing fee. Respondent met with Wilkins and obtained some documents from her, but respondent failed to file Wilkins's divorce case in court as she had promised. Respondent also failed to return any of the fees that Wilkins had paid her.

{¶ 6} The board found that respondent had thereby violated DR 6–101(A)(3).

## Count III

{¶ 7} In August 2003, Kenneth and Cynthia Troutman hired respondent to represent them in a bankruptcy matter. The Troutmans paid $1,000 to respondent for her services and $185 for a bankruptcy filing fee. Respondent gathered paperwork from the Troutmans and prepared a bankruptcy petition for them. She failed, however, to file the Troutmans' bankruptcy petition with the bankruptcy court as she had promised, and she never returned any of the fees that they had paid her.

{¶ 8} The board found that respondent had thereby violated DR 6–101(A)(3).

## Count IV

{¶ 9} In July 2003, Victor Hill hired respondent to represent him in a bankruptcy matter. Hill paid $465 to respondent for her services and $185 for a bankruptcy filing fee. Respondent met with Hill and prepared a bankruptcy petition for him. She failed, however, to file Hill's bankruptcy petition with the bankruptcy court as she had promised, and she never returned any of the fees that he had paid her.

{¶ 10} The board found that respondent had thereby violated DR 6–101(A)(3).

## Count V

{¶ 11} In August 2003, Irena Thomas hired respondent to represent her in a bankruptcy matter. Thomas paid $515 to respondent for her services and $185 for a bankruptcy filing fee. Respondent met with Thomas and prepared a bankruptcy petition for her. She failed, however, to file Thomas's bankruptcy petition with the bankruptcy court as she had promised, and she never returned any of the fees that Thomas had paid her.

{¶ 12} The board found that respondent had thereby violated DR 6–101(A)(3).

## Count VI

{¶ 13} In March 2003, Michelle Wilson hired respondent to represent her in a grandparent-visitation matter and paid a $1,550 retainer. Respondent met with Wilson, performed legal research for her, and prepared a motion on Wilson's behalf. In July 2003, Wilson discharged respondent and demanded a refund of the retainer. In November 2003, Wilson filed a complaint against respondent in

small-claims court. Respondent did not appear at the hearing, and a $1,550 judgment was awarded to Wilson. Respondent has not paid the judgment.

{¶ 14} The board found that respondent had thereby violated DR 6–101(A)(3).

### Count VII

{¶ 15} In June 2000, Kimonios Henderson–Oliver hired respondent to represent her in a domestic-relations matter. Although respondent obtained a divorce decree for Henderson–Oliver, she failed to complete a qualified domestic-relations order or file a quit-claim deed on Henderson–Oliver's behalf.

{¶ 16} The board found that respondent had thereby violated DR 6–101(A)(3).

### Count VIII

{¶ 17} Francisca Acosta hired respondent to represent her in a bankruptcy matter. Acosta paid $650 to respondent for her services and $200 for a bankruptcy filing fee. Respondent met with Acosta and obtained documents from her. She failed, however, to file Acosta's bankruptcy petition with the bankruptcy court as she had promised, and she never returned any of the fees that Acosta had paid her.

{¶ 18} The board found that respondent had thereby violated DR 6–101(A)(3).

### Count IX

{¶ 19} In September 2002, Carmencita Pratt hired respondent to represent her in a domestic-relations matter. Respondent obtained a divorce decree for Pratt, but failed to file the necessary paperwork to ensure the transfer of Pratt's share of the funds in her ex-husband's deferred-compensation plan.

{¶ 20} The board found that respondent had thereby violated DR 6–101(A)(3).

### Count X

{¶ 21} The board dismissed the allegations in Count X of the amended complaint.

### Count XI

{¶ 22} Respondent prepared and filed a bankruptcy petition on behalf of Guther Barnes. Respondent was in the hospital at the time of the bankruptcy hearing and therefore did not attend. The bankruptcy trustee filed a one-page form to finalize the bankruptcy and filed a motion calling for respondent to refund $150 to Barnes. The bankruptcy court ordered respondent to pay a sanction of $10 per day until the $150 was paid to Barnes.

{¶ 23} The board found that respondent had thereby violated DR 6–101(A)(3).

### Count XII

{¶ 24} In January 2002, Jennifer Guilford–Howard and Ernest Howard hired respondent to represent them after they sustained injuries in a car accident. In December 2003, their claims were settled, and the insurance company sent an $11,000 settlement check to respondent. Respondent then wrote separate checks to each of her clients in January 2004 for their share of the settlement proceeds. Those checks were returned for insufficient funds. From the settlement proceeds, respondent was also supposed to pay the Howards' medical provider, but she failed to do so, prompting that provider to sue the Howards for the cost of their medical care.

{¶ 25} The board found that respondent had thereby violated DR 1–102(A)(4) (prohibiting conduct involving fraud, deceit, dishonesty, or misrepresentation), 7–101(A)(2) (prohibiting an attorney from intentionally failing to carry out a contract of professional employment), 7–101(A)(3) (prohibiting an attorney from intentionally prejudicing or damaging a client), and 9–102(B)(4) (requiring a lawyer to promptly deliver funds to which a client is entitled).

### Count XIII

{¶ 26} In November 2003, Andel Marsaw Andrews paid respondent a $350 retainer to represent her in a child-support matter. Respondent never filed a motion to increase child support on Andrews's behalf as she had promised, and respondent never returned any of the retainer that Andrews had paid her.

{¶ 27} The board found that respondent had thereby violated DR 6–101(A)(3).

### Sanction

{¶ 28} In recommending a sanction for this misconduct, the board considered the aggravating and mitigating factors listed in Section 10 of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg."). The board found several aggravating factors: a dishonest and selfish motive, a pattern of misconduct, multiple offenses, harm to vulnerable victims, and the failure to make restitution. BCGD Proc.Reg. 10(B)(1)(b), (c), (d), (h), and (i).

{¶ 29} The board also noted two mitigating factors: respondent's lack of any prior disciplinary record and her cooperative attitude during the disciplinary process. BCGD Proc.Reg. 10(B)(2)(a) and (d). Respondent also suffers from neurotic depression and a chemical dependency to alcohol, according to testimony presented to the board by a qualified health-care professional. The parties and the board agreed that these problems played a role in causing respondent's misconduct. Respondent has not successfully completed any treatment programs for her mental-health and alcohol problems, however, and the panel expressed its

doubts about her ability to return to the competent and ethical practice of law while those problems remain unresolved.

{¶ 30} The parties recommended that respondent be indefinitely suspended from the practice of law in Ohio and that she satisfy several conditions before seeking reinstatement. The board adopted that recommendation.

{¶ 31} We agree that respondent violated all of the Disciplinary Rules cited in the board's report, and we agree with the parties' and the board's recommended sanction. Respondent's repeated neglect of multiple clients calls into serious doubt her ability to practice law in a professional and competent manner, and a licensed psychologist who evaluated respondent concluded that she is not currently mentally competent to practice law. That same psychologist testified that respondent may, with effective treatment, be able to function appropriately in the profession in the future, but she is not able to do so now. In his opinion, any treatment for her diagnosed mental illness must include psychotropic drugs.

{¶ 32} Respondent's addiction to alcohol must be addressed as well. She signed a contract with the Ohio Lawyers Assistance Program ("OLAP") in 2003 promising to refrain from the use of alcohol, and she received both in-patient and out-patient treatment for her chemical dependency in 2004. Even so, she continued to drink after signing the OLAP contract, she was charged with a drunk-driving offense in May 2004 after her discharge from the in-patient treatment program, and she acknowledged at her disciplinary hearing in August 2005 that she continues to drink.

{¶ 33} We have imposed an indefinite suspension in similar cases. See, e.g., *Cuyahoga Cty. Bar Assn. v. McClain*, 99 Ohio St.3d 248, 2003-Ohio-3394, 791 N.E.2d 411, ¶ 12 ("An indefinite suspension may be an appropriate sanction for repeated neglect caused, at least in part, by mental or emotional illness"); *Disciplinary Counsel v. Golden*, 97 Ohio St.3d 230, 2002-Ohio-5934, 778 N.E.2d 564, ¶ 23, 24 ("when misconduct permeates a practice in the way it has in this case, disbarment is often the only sanction available for preserving the public confidence in the judicial system," but "when an attorney's misconduct results directly from clinical depression as it does here, we have tempered our disposition to see whether the attorney is able, with the help of appropriate medical care, to merit the public's confidence again").

{¶ 34} Accordingly, respondent is hereby indefinitely suspended from the practice of law in Ohio. Before seeking reinstatement, respondent must (1) pay full restitution to her former clients and the bankruptcy court as she agreed to do in paragraph 48 of the stipulations filed by the parties with the board on August 8, 2005, (2) comply with the OLAP contract that she signed in November 2003 and comply with any other conditions set by OLAP, (3) obtain a report from her psychiatrist stating that she has been treated for her mental illness and is able to

return to the competent and ethical practice of law, and (4) obtain a similar report from an expert of relator's choosing.   Costs are taxed to respondent.

Judgment accordingly.

MOYER, C.J., RESNICK, PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL and LANZINGER, JJ., concur.

———————

Fred C. Crosby, David M. Paris, and Ellen S. Mandell, Bar Counsel, for relator.

Mary L. Cibella, for respondent.